## MOORE v. SWAMP DREDGING CO. *Inc.*

[88 South. 522, No. 21825.]

1. DRAINS. *Landowner held not entitled to damages to crops through enlargement of canal.*

   The landowner adjoining a right of way of a drainage canal cannot recover damages for injuries sustained to his crops caused by the damming up of the canal, which was made necessary in order to enlarge and dig deeper the canal, when this work is done in a proper workmanlike manner, in accordance with the plan legally adopted for its performance by the drainage commissioners. For all of this damage he, or his predecessor in title, is supposed to have been paid when the right of way was granted to the drainage district.

2. DRAINS. *Successor of grantor to drainage district cannot sue for damages from construction or maintenance.*

   When a landowner has granted to a drainage district a right of way over his land for the purpose of constructing and maintaining canals and ditches, his successor in title cannot thereafter sue the district or the contractor for damages which resulted, either from its construction or maintenance, if the work was done in a proper workmanlike manner. All these damages caused to the landowner are presumed to have been paid for because of the grant.

3. DRAINS. *No action by landowner for damages for construction or maintenance of ditches in proper workmanlike manner.*

   Though the landowner may be damaged because of the doing of this work in a proper workmanlike manner, there was no invasion of his legal rights, and it is a case of *damnum absque injuria*, for which no action may be maintained.

4. DRAINS. *Drainage district must exercise reasonable care and skill.*

   In the exercise of its privileges and powers a drainage district must exercise reasonable care and skill, and, if it be necessary to do a particular act in a particular manner, it may do so, though evil may result to others; but if the same act may as easily be done in another way, without hurt to others, it is the duty of the drainage district to adopt the nonhurtful method of exercising its powers.

5. CORPORATIONS. *Corporation may use own as it will, if it does not injure others.*

A corporation, as well as an individual landowner, within its charter powers, has the right to so use its own as it will, qualified by the duty to so use it as not to injure others, if that be reasonably within its power.

APPEAL from circuit court of Lee county.

HON. C. P. LONG, Judge.

Action by C. B. Moore against the Swamp Dredging Company, Incorporated, and others. Judgment on a peremptory instruction for defendants, and plaintiff appeals. Affirmed.

*Claude Clayton*, Atty., for appellant.

It will also be observed that this appeal is predicated and based solely upon section seventeen of our constitution which provides: "That private property shall not be taken or damaged for public use," etc., and that this action is predicated upon that provision of said section which was incorporated into the constitution of 1890 for the first time. In the case of the *City of Jackson v. Williams et al,* reported in 46 So. 551, this court construing this provision of our fundamental law, used the significant expression: "Nothing is now so important to the private citizen as the question of the extent to which his right of private property may be invaded by a municipality and taken and damaged, etc."

This court again in the case of *Sturges* v. *The City of Meridian,* 48 So. 620, in a comprehensive opinion delivered by Justice FLETCHER, in my judgment, decides the proposition without any equivocation, and in diametrical opposition to the action of the learned circuit judge who gave the peremptory instruction in this case.

Once again this court speaking through Special Justice CAMPBELL, in the case of *King* v. *Vicksburg Railway and Light Company* in 42 So. 704, and in construing section 17 of our constitution says: "Due compensation is what

ought to be made, i. e., what will make the owner whole pecuniarily for appropriating or injuring his property by any invasion of it cognizable by the senses, or by interference with some right in relation to property whereby its market value is lessened as the direct result of public use. This language is found in the opinion of the court at page 205 of said volume. On the same, Justice CAMPBELL says: "The Constitution, paragraph 17, makes the right of the owner of private property superior to that of the public, reversing the former rule that the individual might be made to suffer loss for the public."

We think also that the case of *Thompson* v. *City of Winona,* 51 So. 129, absolutely and without question is decisive of the question here presented.

It has been, we think, universally decided by this court that a drainage district is a *quasi*-municipal unit or subdivision, of the state, then, if this conclusion be true how can this case be affirmed in the light of the opinion rendered in *Brahan* v. *Meridian Home Telephone Company,* 52 So. 485, in an announcement of the law relating to such conditions. This opinion was handed down by the late Chief Justice MAYES, in which it was announced, that a municipality could not delegate authority to any one to injure or damage private property.

It will also be observed from the record, that even though Banks, a former owner of the land in question actually signed a petition to the commissioners requesting that the canal in question be widened and deepened, still this action upon his part, if true, was not shown by the testimony to have been brought to the attention of appellant, nor was same shown to have been placed on record prior to the time that appellant purchased the land in question. In the case of *Robinson* v. *Mayor and Aldermen of the City of Vicksburg,* 54 So. 859, Justice ANDERSON, in his opinion therein, says: "Private property shall not be taken or damaged for public use except on due compensation being first made to the owner thereof, etc." The petition signed by the appellant contained no expressed

waiver. May a waiver be implied from a mere signing of the petition by him? Or may a waiver be implied by his signing the petition with the knowledge that in paving the street the city might find it necessary to change its grade? We think not. In our judgment such conduct ought not to operate as an estoppel. A constitutional right may not be so lightly waived.

The court will please bear in mind that we are not seeking to recover from the treasurer of the lower Coonewar drainage district, but this suit was brought against a corporation, The Swamp Dredging Company and D. W. Robins. In connection with this phase of the case we respectfully refer the court to the case of *Mississippi Central Railroad Company* v. *Holden*, 54 So. 851.

As bearing directly on the question presented we also refer the court to the opinion of Justice CALHOON in the case of *Yazoo & Mississippi Valley Railroad Company* v. *Lefoldt*, 39 So. 459, and the authorities cited in that opinion.

The testimony of appellant and his witnesses show, that he suffered a loss of thirty-five acres of the very finest alfalfa, on land that was in a very high state of cultivation; that this was a complete loss, and that it was occasioned by appellees in the work undertaken by them. Not only this, but that he also suffered a loss of fourteen acres of corn which also according to his testimony, was completely destroyed. Now in view of the above authorities what right (I do not speak of power) had the trial court to refuse the submission of this case to a jury?

I am perfectly familiar with the recent case of *Stephens* v. *Beaver Dam Drainage District*, which opinion was delivered by Chief Justice SMITH on Janary 3, 1921, and reported in 86 So. 641, which, in my judgment, has no application whatsoever to the allegations contained in the declaration in this case, and the facts as disclosed by the testimony of the witnesses. Chief Justice SMITH in paragraph two of his opinion decides, in my judgment, the identical proposition presented here. It is held in this

case that a public corporation created *in invitum* cannot be held responsible for the act of negligence either of its officers, agents, or employees. The court will again bear in mind that we are not seeking to recover from the drainage district. If appellees in performing their contract had used therein a sufficient amount of dynamite to have blown appellant's entire farm clear over the smoke stacks, of eternity, could it be held in the light of the above opinion of this honorable court that there would be no liability?

We respectfully submit that this case should be reversed and submitted to a jury under proper instructions.

*Robins & Thomas,* for appellee.

The appellant's learned counsel bases his case, in his brief to this court on section 17 of the constitution of Mississippi, that private property cannot be taken or damaged for public use, except on due compensation being made to the owner.

He seems to have the idea, because of this constitutional provision, that any and all damage to private property is protected, no matter when or how it occurs. He loses sight entirely of the doctrine expressed in the legal maxim *"damnum absque injuria."*

This principle, which lies at the threshold of the consideration of this case, is thus expressed: "To constitute an injury, there must be a violation of some legal right, and there are many cases in which a person may sustain actual damage, without sustaining any legal injury." In such cases the damage is *damnum absque injuria*—damage without injury—and no cause of action arises in favor of the party sustaining it against the party by whose act it was caused. 1st Corpus Juris, title, "Actions," page 964.

"No cause of action arises from the doing of a lawful act or the exercise of a legal right, if done or exercised in a lawful or proper manner, the resulting damage, if any, being *damnum absque injuria*. A liability may, however, arise from the doing of a lawful act, or the exercise of a

legal right in a negligent or improper manner, but in such cases the liability is based, not upon the act done, but upon the manner of doing it." Corpus Juris, 965.

Everyone has a right to the natural use and enjoyment of his own property, and for lawful acts done by one person upon his own property, in a lawful and proper manner, there is no cause of action, although damage to another may incidentally result therefrom, such damage being *damnum absque injuria*. Corpus Juris, page 966.

The distinction between injury and damage is well defined by the supreme court of Connecticut in the case of *Parker* v. *Griswold*, 42 Am. Dec., 746. An injury, legally speaking, consists of a wrong done to a person, or in other words, a violation of his right. It is an ancient maxim that a damage to one, without an injury in this sense (*damnum absque injuria*) does not lay the foundation of an action; but if the act complained of does not violate any of his legal rights, it is obvious that he has no cause to complain . . . An injury is a wrong; and for the redress of every wrong there is a remedy; a wrong is a violation of one's right and for the vindication of every right there is a remedy.

"The exercise by one of a legal right cannot be a legal wrong to another." *Haywood* v. *Tilson*, 46 Am. R. 373. To state the point in a few words, whatever one has a right to do, another would not have the right to complain of. Cooley on Torts, 830.

"To constitute a tort, the wrong must have amounted to a breach of a legal duty owing by the wrongdoer to the injured party, which duty may exist either independent of or be created by statute. That a mere moral duty has been disregarded or moral right violated and damage suffered in consequence thereof, is not sufficient to give rise to an action for tort, where no legal right of plaintiff has been infringed. Such cases the law classified as *damnum absque injuria*."

The above quotation is from 37 Cyc. page 418, and the qutoation is followed by quite a number of instances of the application of the doctrine.

"In the absence of a statute or of an easement acquired, no legal right is infringed where the owner of real property is deprived of right, air, or view, or the support of artificial burdens placed upon his land, by the act of an adjoining owner in erecting and maintaining a fence, building or other structure on his own land, or in excavating on the same with due skill and care to avoid injury . . . and it is the established rule that when a lawful act is performed in a proper manner the party performing it is not liable for mere incidental consequences injuriously resulting from it to another." 38 Cyc. 421.

The owner of property, who digs a mine or well on his property, is not liable if he interrupts the flow of percolating subterranean waters, to his neighbors' 'damage *Ocean Grove, Camp Meeting Association* v. *Asberry Park,* 40 N. J. Eq. 447.

There is a good statement of this doctrine in *West Virginia* v. *Standard Oil Company,* 88 Am. S. Rep., at page 898. "The plaintiff must have a right and that right must be injured by the defendants, and injured, too, by unlawful means, by acts which the defendants had no right to do. Plaintiff must establish that defendants owed a duty to the plaintiff, and broke that duty, to make an actionable tort. There can be no tort, unless there is a duty from one to another, and that duty broken. You may set this down as a test of tort: 'A legal right must be invaded in order that an action of tort may be maintained. The mere fact that the plaintiff may have suffered damage of the kind which the law recognizes is not enough. There must also be a violation of a duty recognized by law. In the language of the civil law mere *damnum* is not enough. There must also be *injuria;* that is, *ex damno absque injuria non oritur actio.* We must nicely distinguish between *damnum* and *injuria.* We commonly use the words injury and damage indiscriminately, but in the rule above these Latin

words are distinct. *Damnum* means only harm, hurt, loss, damage; while *injuria* comes from in which means against, and *jus,* which means right, and the two means something done against the right of a party, producing damage, and has no reference to the effect or amount of damage. Unless a right is violated though there be damage, it is *damnum absque injuria.'* ''

The court will bear in mind, in the consideration of this principle, that the drainage district had a grant of a right of way for its drainage ditch, through the lands owned by the appellant, Moore. The right of way crossing plaintiff's land, was obtained, in the first instance, by grant. Agreed Statement of Facts, transcript, page 16. This grant was made for the purpose of constructing a drainage canal, and the court below was absolutely right and justified, under the authorities, in holding that this right of way and grant carried with it the right to construct, in the usual and ordinary way, with reasonable skill and diligence, the canal through his land, with a dredge boat. In fact, the testimony shows that the dredge boat was in operation at the time plaintiff bought his land, on the same canal, but not on his land. The work was started in October or November, 1918, and the appellant acquired his interest in the land in January, 1919. See transcript page 70.

We have no case directly in point as to what is included in a grant to a drainage district from this state, but our court has decided what is included in a right of way grant to a railroad company. In *Canton* v. *Cotton Warehouse Company,* 84 Miss. 291. The supreme court of Mississippi says: "The question next arises as to what right a railroad company acquires in its right of way, and further, whether there is any difference in the extent of these rights, where the right of way is over private property, or where it traverses public streets or highways. It should be borne in mind that both railroad corporations and municipal corporations are created solely by legislative authority, and are clothed in this connection at least, only with such

powers as are expressly granted in the creative act, which vitalizes and brings them into existence. By the grant to a railroad of a right of way, whether that grant be made by legislative act over public or across public highways, or by condemnation proceedings, donation, or purchase, through private property, certain rights in the use of its right-of-way are acquired by the railroad. It has the right to do all things with its right of way, within the scope of its charter powers which may be found essential or incidental to its full and complete use for the purpose for which it was acquired. Thus it has been held that a railroad cannot be successfully constructed, or advantageously operated, without establishing proper grades, so that trains may be safely and speedily transported over its tracks. The abutting owner has no claim for compensation for any earth that may be removed for the right of way, or for damages by establishing in a proper manner a grade thereon.

We call attention to the fact that in this opinion, rendered by Judge TRULY, the acquisition of the right of way confers all essential and incidental authorities to use it for the full and complete purpose for which it was acquired. One of the questions decided in this case was that the railroad company, by virtue of its right of way grant to it, to cross a public road or way, has the right to cross a street, and that it has, as an incidental right, the right to construct conduits across streets and across its right of way, and that the construction of said conduits would necessarily temporarily and partially obstruct the street, and that this was a damage and not an injury. *N. O. B. R. Railroad Company* v. *Brown,* 64 Miss. 482; *A. & V. Railroad Company* v. *Stingily,* 111 Miss. 239; *Railroad Company* v. *Brown,* 64 Miss. —; *A. & V. Railroad* v. *Stingily,* 111 Miss. 239.

When Mr. Moore's grantor, through whom he claims, made a grant of this right of way to the drainage district through this land, it included the right, of course, to construct the canal in the usual and reasonable way, and the

grant supposed compensation for all incidental and consequential damages that might result from a proper construction of the canal.

We think the case of *Stephens* v. *Beaver Dam Drainage District,* in this court, reported in 86 So. page 641, to the effect that a drainage district, organized under chapter 269 of the Laws of 1914, (and this would apply equally to the present drainage district) is an involuntary public corporation and as such, is not liable for the unauthorized acts of its officers, agents, or employees, but in effect this case decides that the acquisition of the right of way includes compensation for all damages resulting from the non negligent construction of the canal.

We stated in a former part of this brief that we had not found a decision of our court directly in point, to the effect that a grant of a right of way to construct a canal would be conclusively presumed to have covered incidental and consequent damages growing out of the proper construction of it, but the analogy between the grant of a right of way to a railroad company, and especially where it is expressed as in the Stingily case, is so complete that we take it that that is an authority for the present case.

However, we found a decision of the supreme court of Arkansas in *Daniels* v. *St. Francis Levee District,* in 84 Ark. 333, that is directly in point, to the effect that the grant of a right of way to construct a levee over the land of another precludes him from recovering from the district any damages resulting from floods due to the proper construction of the levee. We confidently submit the case to the court.

Sykes, P. J., delivered the opinion of the court.

The appellant, C. B. Moore, as plaintiff, filed in the circuit court suit for damages for the value of thirty-five acres of alfalfa and fourteen acres of corn alleged to have been drowned and killed by water caused by the damming up of the Coonewar canal by the defendant. The declara-

tion alleges the organization of the Coonewar drainage district several years prior to the alleged injury; that this district was organized and operated under the provisions of chapter 39 of the Code of 1906 (chapter 99, Hemingway's Code) ; that the commissioners of this drainage district, acting in their official capacity, entered into a contract with the defendant to clean out and deepen and widen the canal, which runs through the land of plaintiff; that in accordance with this contract the defendant in the performance of it dammed up the canal, and placed its dredgeboat in it for the purpose of performing the work, by virtue of which the canal was flooded with water and completely stopped as a running stream, causing it to overflow and break through its banks and pond the water upon the alfalfa and corn lands of the defendant and hold it there for a sufficient length of time to kill and drown out these crops.

The defendant filed a plea of the general issue and a special plea in which it averred, among other things, its nonliability because of the legal organization and maintenance of the drainage district and the agreement of the landowners in this district to the doing of this work, among which landowners was the immediate predecessor in title of plaintiff, and the plaintiff bought his land after the district was organized and while this work was being done by the defendant, and that the work was done in a proper, skillful, and workmanlike manner, in the method and according to the plans under which the defendant contracted to do it, and without any negligence on the part of the defendant; that any damage done to the crops of the plaintiff was an incident to the construction of the work. There were other pleas filed not necessary to be noticed in the case.

Upon motion, the plaintiff was allowed to amend his declaration and allege that the defendant was guilty of negligence in the performance of his contract, and that it was not performed in accordance with law, and was in

violation of section 17 of the Constitution of the state of Mississippi.

There appears in the record an agreement to the effect: That the Coonewar drainage district was organized several years ago, under proper proceedings before the board of supervisors. Subsequent thereto proceedings were had in the chancery court under chapter 39, Code of 1906 (chapter 99, Hemingway's Code). That the orders and decrees under this chapter, and under which this contract was let, were proper and valid and in strict conformity with the law. That the commissioners were properly appointed, the district properly organized, the proper orders obtained for the enlarging of the canal, and that the canal crossed the land of the plaintiff, over which a right of way was obtained in the first instance by grant. That the work which was being done on this canal, about which this controversy arises, was being done by virtue of an order of the chancery court. It is not contended that the plan adopted for the enlarging of this canal was an improper plan.

The circuit judge held that the only issuable fact presented by the pleadings and this agreement was whether or not the defendant was guilty of negligence in the performance of the work in enlarging this canal, and, if so, whether or not this negligence was the proximate cause of the alleged damage to plaintiff. At the conclusion of the introduction of the testimony a peremptory instruction was given in favor of the defendant, upon which judgment was entered.

In this court it is the contention of the appellant: First, that he is entitled to recover in this case regardless of any negligence of the defendant under section 17 of the Constitution, which provides that "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner," etc.; second, that the testimony in the case shows that the defendant contractor was guilty of negligence in the building of a dam in the canal on the plaintiff's land and in failing to provide

an adequate ditch or outlet for the water from a point above the dam, and running into the canal below the dam.

Without setting forth in detail all of the testimony in the case, it is sufficient to say that the uncontradicted testimony shows that the contractor did this work in accordance with the plans for the enlarging of the canal; that the putting in of the dams across the canal was the usual, proper and necessary way in which this work had to be done; that the outlet, or, as it is called in the record, spillway, which is a small ditch leading out of the canal just above the dam and into the canal again below the dam, and which is meant to take care of some of the surplus and overflow water of the canal, was in this case built in the usual, proper, and ordinary manner. In fact we find no question of negligence in this record which should have been submitted to the jury.

The agreed statement of facts shows that the Coonewar drainage district acquired its right of way in this case by grant for canal and drainage purposes; that it was necessary and proper for this enlargement work to be performed. By this grant the drainage district necessarily became vested with the right and power to do whatever work was necessary and proper upon the canal for its proper use and maintenance, and included in this grant was the right to properly construct the canal in the first instance, and the further right to properly maintain it in the future, doing whatever work became necessary to maintain it as a proper canal to drain the lands within the district, which grant necessarily carried with it the right to clean out, enlarge, or do whatever other work was necessary and proper for its maintenance and use.

In the case of *Canton v. Cotton Warehouse Co.,* 84 Miss. 268, 36 So. 266, 65 L. R. A. 561, 105 Am. St. Rep. 428, in discussing for what purpose a railroad could use its right of way this court said:

"It has the right to do all things with its right of way, within the scope of its charter powers, which may be found essential or incidental to its full and complete use for the purpose for which it was acquired."

In the case of *Railroad* v. *Brown,* 64 Miss. 479, 1 So. 637, in speaking of a landowner over whose land the railroad company had acquired a right of way by condemnation proceedings, it is held that:

"The plaintiff (the landowner) is not entitled to recover anything from the defendant for doing what it had the right to do, no matter why it may have done it. . . . Mr. Brown is not entitled to damages because of the unsightliness of his plantation, or its supposed unhealthiness from standing water, or the inconvenience of crossing over by reason of the pits made in the excavations on the right of way. He must suffer uncomplainingly the natural result of the proper exercise by the railroad company of its right, as purchaser and owner of the right of way over his land, to make such use of it as it saw proper under its charter and within its provisions. For all this he is supposed to have been paid in the proceedings by which his land was condemned for the right of way. He was entitled to this, and it must be assumed that he got all he was entitled to."

Again in the case of *Railroad Co.* v. *Stingily,* 111 Miss. 237, 71 So. 376, this rule is therein reannounced as follows:

"As we understand the trend of the decisions of this court, it has always been held that when a right of way for a railroad company is condemned or bought, the right to do any and all things necessary and proper in the use of same are presumed to have been paid for. The land owner is supposed to have been compensated for all damages incidental to a proper use of the land. He, of course, must have taken into consideration all of the injuries which might flow from the proper operation of a railroad over his land, and demanded and received compensation for the land taken, not as a separate tract, but as a part of the entire tract. He could and should have received compensation for damages to the whole tract which would follow from a maintenance of the right of way."

In the case of *Daniels* v. *Board of Directors of St. Francis Levee District*, 84 Ark 333, 105 S. W. 578, this rule is thus correctly stated by the supreme court of that state:

"Plaintiff having expressly consented to the construction and maintenance of the levee and granted a right of way over his land for that purpose, he cannot complain of any damage to the land resulting from the construction of the levee in a skillful manner. His grant to the levee district of the right to construct the levee through his land was a waiver of any claim for damages to the land resulting from the construction and maintenance thereof, if done in a skillful manner. Such damages are conclusively presumed to have been compensated for by the consideration paid for the conveyance."

In this case, since the drainage district is not liable for this damage, then the contractor necessarily cannot be held liable for the doing of the work in a proper manner.

In principle there is no difference between the use of a railroad right of way and the use of a drainage canal. The landowner in each instance is presumed to have been compensated for all damages to his land which results from a proper use of the right of way for the purpose for which the land was granted.

In this case, assuming that the damage to the crops was caused by the manner in which the work of enlarging the canal was being done, the testimony shows that the work was being properly performed, and that the drainage commissioners had a right to have this work done. Consequently, there was no invasion or violation of any legal right of the plaintiff, though his damage was caused by the doing of this work. This is *damnum absque injuria*.

"No cause of action arises from the doing of a lawful act or the exercise of a legal act if done or exercised in a lawful and proper manner; the resulting damage, if any, being *damnum absque injuria*." Corpus Juris, vol. 1, p. 965.

"Everyone has a right to the natural use and enjoyment of his own property, and for lawful acts done by one person upon his own property in a lawful and proper manner

there is no cause of action, although damage to another
may incidently result therefrom, such damage being *dam-
num absque injuria.*"

This rule is well settled in the case of *Parker* v: *Griswold,*
17 Conn. 288, 42 Am. Dec. 739:

"An injury, legally speaking, consists of a wrong done
to a person, or, in other words, a violation of his right. It
is an ancient maxim that a damage to one, without an in-
jury in this sense (*damnum absque injuria*) does not lay
the foundation of an action; because, if the act complained
of does not violate any of his legal rights, it is obvious that
he has no cause to complain."

Again in *Heywood* v. *Tillson,* 75 Me. 225, 46 Am. Rep.
373, quoting Cooley on Torts 685:

"The exercise by one man of a legal right cannot be a
legal wrong to another."

(4, 5) In the adoption of the plans and in the doing of
the work the maxim, *"Sic utere tuo ut alienum non lædas"*
as construed by the court, must be observed. This rule is
thus laid down in *Sinai* v. *Railway Co.,* 71 Miss. 547, 553,
14 So. 87, 88:

"But, in the use and exercise of its privileges and pow-
ers, we must not assume that the state designed to disturb
well-settled, general legal principles, and to absolve its
creation from the observance of the same rules of conduct
as apply to and govern the natural person. The railway
corporation must not recklessly and willfully use its pow-
ers to the injury of the citizen. It must use its privileges
in such manner as may be necessary to meet the objects of
its creation; but it must do so with reasonable care and
skill. It may, by proper expropriation proceedings, take
private property for its public use, but it must first make
compensation to the owner despoiled, and the owner, as
well as any other citizens affected by its construc-
tion, has a right to insist that future evils, foreseen as
likely to follow a particular method of exercising the
powers granted the railway corporation, shall be guarded

against, if the same can be conveniently and reasonably done, regard being had to the interests of the corporation as of the individual citizen.

"If in the execution of chartered rights it shall become necessary to do a particular act in a particular manner, it may safely do so, though evil may result to others; but if the same act may as well be done for the railway's interests in another way, and without hurt to others, reason and justice will require the adoption of the nonhurtful method of executing its powers. The execution of its rights in a particular method foreseen to be fraught with peril and injury to others, when another method, equally safe, convenient, and useful, is rejected, will subject the corporation to the imputation of willful negligence.

"With railway corporations as with natural persons employed in the same or like work, it must be true that unnecessary and wanton injury may not be done one by another in the use and enjoyment of his proprietary rights. The rule possesses flexibility and adaptability to all conditions likely to arise is that which guards the right of the landowner to deal with his own as he will, qualified by the duty imposed upon him to so use his own as not to hurt his neighbor, if that be reasonably within his power."

To the same effect is *Holman* v. *Richardson*, 115 Miss. 169, 76 So. 136, L. R. A. 1917F, 942.

In this case there is no contention, either in the pleadings nor shown by the testimony, that any other plans could have been adopted or the work done in any way save the plan adopted and the manner in which it was executed.

The learned circuit judge was correct in granting the peremptory instruction for the defendant.

*Affirmed.*