YAZOO & M. V. R. Co. *v.* HUGHES.*

(Division A. May 4, 1925.)

[103 So. 805. No. 24915.]

RAILROADS. *Provision of deed of strip for widening right of way held contract to keep open existing road crossings.*

   Provision of deed to railroad of strip to widen right of way, that company maintain and keep open two road crossings then over track, *held* a contract, which company was required to fulfill, even if necessary to reduce its grade.

----

*Headnote 1. Railroads, 33 Cyc., p. 179.

APPEAL from chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by Mrs. Mary Ella Hughes against the Yazoo & Mississippi Valley Railroad Company. Demurrer to bill was overruled, and defendant appeals. Affirmed and remanded.

*May, Sanders & McLaurin*, for appellant. *Chas. N. Burch*, of Counsel.

The question to be determined by this court, upon the threshold, is whether or not the appellant had the right, in view of the covenant contained in the deed, to elevate its track for proper purposes at the places in question, in the absence of any stipulation in the deed that any particular level of the embankment should be maintained.

The general rule is stated in 22 R. C. L. 863, section 114. See same authority, sections 115, 865. The rule above announced has long been the settled rule in this state. *Moore* v. *Swamp Dredging Co.*, 125 Miss. 842, 88 So. 522.

It will thus be seen that in the absence of any agreement to maintain the railway embankment at any particu-

lar level, the railroad company purchased the right to build the embankment and if the embankment had the effect of destroying one of the crossings in question and impairing the other, the appellee has no legal cause to now complain as she is conclusively presumed to have received her pay in consideration of the deed exhibited with her bill. Moreover, the language of the covenant expressly confines the work to be done by the railroad company to the strip of land embraced within the calls of the right-of-way deed, and under the allegations of the bill if the crossings had been maintained across the elevated embankment they would have been useless until appellee should build an approach on the west side of the railroad right of way. This fact appears on the face of the bill and the railroad company was under no duty and had no right to enter upon appellee's land for the purpose of building and maintaining such approach. *Williams* v. *Clark,* 140 Mass. 238, 5 N. E. 802; *Speer* v. *Erie Railroad Company,* 60 Atl. 197.

Appellant's obligation to appellee in reference to the road crossings was expressly and exactly defined by this limitation: "So far as the same extends across its said right of way." In so far as the bill shows, this has been done. But the complaint is that even though the railroad company has literally complied with its contractual obligations as thus defined and restricted, the raising of the embankment requires something else to be done to permit free and convenient passage over and across the railroad right of way, and this something else to be done was not provided for in the contract between the parties.

Our right-of-way deed contains a covenant requiring us to maintain two particular crossings restricted to the width of our right of way conveyed by said deed with no further reservation and without conditions. The complaint here is not that we breached this obligation to maintain the crossings on our right of way, but that the elevation of our embankment would require an approach on the west side so steep that it could not be conveniently

used. We did not make any contract not to elevate our embankment and not to bring about this condition. If we maintain the crossing on our embankment, on any level of embankment, we have complied with our contract, and having the right to raise our embankment and being under no obligation to make a convenient approach, if the crossing is made less convenient by the elevation work rendered proper or necessary in the efficient maintenance of our railroad that is a consequence which must be borne by appellee.

The most that the appellee can require is that the crossings be maintained over the elevated embankment within the limits of appellant's right of way conveyed by the deed, and it affirmatively appears that this will not serve appellee's purpose and in this situation the rule laid down by our court in the case of *I. C. Railroad Company* v. *Wright,* 135 Miss. 435, 100 So. 1, is peculiarly applicable.

So, in this case, the failure to maintain the crossings "so far as the same extend across its said right of way," is not the proximate cause of the inconvenience and damage complained of and cannot therefore furnish the basis of an action.

*Brunini & Hirsch,* for appellee.

Let us look to where appellant's construction of the contract would logically lead and in doing so, let us disregard for the moment, the contract or deed made between Mrs. Hughes and the Railroad Company. Mark you, when this right of way was sought to be enlarged, the railroad embankment and the tracks thereon had already been built and maintained for years. It will be manifest from the language of the deed that the parties had in mind the conditions as they then existed. The case of *Connors* v. *Railroad Company,* 86 Miss. 356, is helpful to convey to this court what appellee has in mind.

The railroad company in the present case says with every confidence, that under the general law on the sub-

ject of the acquisition of rights of way and under its construction of the deed from Mrs. Hughes to it, it has the right to elevate its track to such a point that Mrs. Hughes could not possibly pass over the track to her property. In other words, absolutely destroy all ingress and egress by the closing of both roadways, and it tells this court earnestly, that the only obligation that it has under the general law and under the deed as well, was to keep the roadway on top of its track so that if Mrs Hughes could, by an elevator, hoisting machine or aeroplane, reach to the top of the elevated right of way, she could pass over and back, on the roadway, which it might maintain across its tracks. This would be monstrous. It would be a shock to common sense and reason. Can it be said that Mrs. Hughes, in giving the deed to the railroad company, contemplated or even dreamed that the railroad company could destroy, absolutely, her property without paying for it, by preventing all ingress or egress thereto. Parties not only contract with reference to the law, as it then exists, but they contract more especially with reference to conditions as they then exist.

Mrs. Hughes alleges that said roadway or crossing over defendant's right of way at the south end of complainant's property cannot be restored unless the said right of way, track or embankment be restored to the level of height before said raise and elevation because the grade to the west of said right of way will necessarily have to be made so great as to prevent the ingress and egress from complainant's said property, west of said right of way and that this condition is now prevalent in reference to the roadbed at the north end of complainant's said property.

From the conditions that have heretofore been made known, the court can readily see that if the elevation of the roadbed is to be further increased, and which the railroad company contends it can do, neither the railroad company nor any one else could hardly build an approach to the railroad right of way from the east unless per-

chance, the national government could be induced to give its permission to Mrs. Hughes to correspondingly elevate the National Cemetery Gravel Road. It is certainly, to our minds, beyond the pale of reason to contend that the railroad company took the deed in question, free of all of its terms and provisions, and free of all the conditions surrounding the property, a right of way conveyed affecting the situation.

None of the authorities offered by the railroad company are in point. In most of the cases cited, there were no deeds involved, and in the other cases, they turned upon the peculiar language of the deeds and in some cases, presented different conditions, but when you contract with reference to a street or a roadway, you necessarily contract with reference to them as they stand at the time of the contract.

We are assuming that the Railroad Company is not questioning the right of Mrs. Hughes to the mandatory injunction, if her construction of the deed be correct. We understand that they are simply contending that what it did, it had a perfect right to do, and for that reason we are not entitled to the mandatory injunction. The right of Mrs. Hughes to the mandatory injunction is well established in the general law: ''Where a restrictive covenant with respect to the use of property, real and personal, is valid, it may be enforced by injunction.'' 32 C. J. 203, sections 315, 316.

It has not been our purpose to search for the goose case. The principles for which we contend are all established in the jurisprudence of our state and county. See sections 270, 271, 272, 273, 283, 284 and 285, Pomeroy's Equitable Remedies, Vol. 1 and which is also Vol. 5 to the Third Edition Pomeroy's.

*May, Sanders & McLaurin,* in reply for appellant; *Chas. N. Burch,* of Counsel.

The major portion of appellee's brief is devoted to discussion and illustration of the consequences which have

resulted or may ensue by the application of the principles of law and rules of construction adopted and followed by this Honorable Court in the cases cited in our original brief. In the highest deference to learned counsel for appellee, we respectfully submit that this line of argument failed to impress the court in its consideration of the following cases: *Railroad Company* v. *Brown,* 64 Miss. 479, 1 So. 637; *Canton* v. *Cotton Warehouse Co.,* 84 Miss. 268, 36 So. 266.; 65 L. R. A. 561.; 105 Am. State Rep. 428; *Railroad Co.* v. *Stringily,* 111 Miss. 237, 71 So. 376; *Moore* v. *Swamp Dredging Co.,* 125 Miss. 842, 88 So. 522; in all of which it was held that if and when it should become necessary for the railroad company to raise or lower its embankment adjacent to appellee's land, to properly maintain and operate the railroad, the appellee would have no right to complain, being estopped by her deed, having received compensation for all damages resulting or to result from the elevation of the embankment along the railroad company's right of way, to enable it to maintain transportation facilities in the discharge of its transportation duties; and if greater damage than may have been originally anticipated has resulted from necessary changes in appellant's embankment and the original purchase price of the right should seem inadequate, again appellee is estopped to claim greater compensation, having agreed to accept and having accepted compensation originally considered as adequate compensation for all damages flowing from the proper maintenance of the railroad embankment.

*Connors* v. *Railroad Co.,* 80 Miss. 356, cited by opposing counsel, furnishes no aid in the solution of the question here presented, because, in that case the railroad company elevated its embankment about the grade prescribed by the municipal authorities of the city of Vicksburg, constructing its embankment to a height in violation of the law of the municipality.

It is an indisputable fact that appellant's predecessor in title could have acquired the right to build the em-

bankment in question to any height, regardless of the consequence to appellee's parcel of land situated west of appellant's track, either by condemnation or by purchase, so as to forever preclude suits at law and in equity by appellee, her legal representatives and assigns, and we respectfully maintain that the appellant's predecessor in title did acquire by purchase such right by the deed exhibited with appellee's bill, and therefore that the decree of the Chancellor is erroneous and must be reversed.

Argued orally by *Geo. W. May,* for appellant, and *John Brunini,* for appellee.

McGOWEN, J., delivered the opinion of the court.

This appeal was prosecuted from a decree overruling the demurrer of the appellant, the Yazoo & Mississippi Valley Railroad Company, defendant in the court below, to the original bill of the appellee, Mrs. Hughes, and appeal was granted to settle the principles of the cause.

The facts set out in the bill, material to a decision of this cause, are about as follows:

That complainant, Mrs. Hughes, then Mrs. Beck, on or about the 26th day of April, 1888, owned a tract of land in Warren county, west of the right of way of the railroad company and north of Glass bayou. Glass bayou, adjacent to the Hughes property, is the north limit of the city of Vicksburg. The property slopes from the railroad down to the Mississippi river. The railroad company had a right of way through the property from its north line to its south line, and there were two roadways over and across the right of way of the company; one at the south end of complainant's property, and the other at the north end, the south roadway leading into Washington street.

Between the south roadway and the cemetery road Mrs. Hughes then owned a triangular-shaped piece of ground. Along this place the railroad company desired

to widen its right of way and purchased from Mrs.
Hughes, for the consideration of one thousand dollars, a
strip of ground ten feet wide from the center of the main
track and twenty feet eastward, or to the National Ceme-
tery road.

The bill further alleges that the only means of ingress
and egress through the property of Mrs. Hughes was
over these two roadways at the north and south ends of
her property; that these two roadways were essential to
ingress and egress to and from her property, and the
only means of so doing except by the river landing
that the railroad company had been operating a rail-
road for some time prior to the execution of this deed;
that its right of way was very narrow through a part of
Mrs. Hughes' land; that complainant's property sloped
west of the railroad right of way down to the river.

The deed clearly shows that the railroad company had
a right to fill in with dirt on the west side to preserve its
tracks to the point of encroachment beyond the right of
way on complainant's property. The deed further pro-
vides that the railroad company would not have any
rights on the water front for landings or wharfage, but
the grantor in the deed was to have the free use of the
water front.

It is further provided in said deed that—"The railway
company shall maintain and keep open for ingress and
egress from said property west of its tracks its two roads
or crossings now over or across its said track on said land,
so far as the same extends across its said right of way,
one near the north end of said land and the other near the
south end thereof."

Complainant further charged that the defendant in the
last ten years had raised and elevated its tracks, roadbed,
and embankment to a considerable height above their
former level, extended the base of its embankment to a
great degree on the property of the complainant, and fur-
ther that the defendant railroad company had absolutely
closed and destroyed the roadway or crossing in said

ten years, over its tracks at the south end of complainant's property, and that defendant had by its said conduct as aforesaid made the roadway or crossing at the north end of complainant's property more difficult to get over; that the value of complainant's property was damaged, and the income lessened, by the raising of the grade and the failure to maintain the crossing; that the north end was rendered inconvenient, and that said raising of said roadbed was without her consent and over her protest; that there is no other way of reaching the public road from complainant's property except over these road crossings; that the destruction of the south road and the impairment of the north road crossings caused complainant irreparable damage; and she prayed for an enforcement of the provisions of the deed and for a mandatory injunction requiring the railroad company to reduce its tracks and restore said roadways or crossings over the right of way north and south of complainant's said property.

The sole and only question presented to this court for decision is the construction of the words in the deed—"and the said railway company shall maintain and keep open for ingress and egress from said property west of its tracks its two roads or crossings now over or across its said track on said land, so far as the same extends across its said right of way, one near the north end of said land and the other near the south end thereof"—whether these words constitute a limitation upon the general power of the railroad company to use its right of way for any purpose within the scope of the purposes for which the land was acquired, or whether the railroad company had by contract agreed to maintain and keep open for ingress and egress these two road crossings over its right of way.

In *Canton* v. *Cotton Warehouse Co.*, 84 Miss. 268, 36 So. 266, 105 Am. St. Rep. 428, 65 L. R. A. 561, this court said: "It [referring to the railroad right of way] has the right to do all things with its right of way, within the

scope of its charter powers, which may be found essential or incidental to its full and complete use for the purpose for which it was acquired.''

To the same effect is *Railroad* v. *Brown*, 64 Miss. 479, 1 So. 637; *Railroad* v. *Stingily*, 111 Miss. 237, 71 So. 376, all of which were referred to and approved in *Moore* v. *Swamp Dredging Co.*, 125 Miss. 842, 88 So. 522.

Reaffirming the above rule, and applying same here, we find that by this deed, excerpts from which we quoted above, the railroad company contracted explicitly and without any ambiguity to maintain and keep open for ingress and egress these two crossings, and railroad companies may, like individuals, make contracts, and it may be said that a part of the consideration of the deed here in question made by the complainant to the railroad company was this very valuable right of ingress and egress.

Apparently the chancellor so construed the deed. Our attention has not been called to any reason why this very clear and explicit language should not have full force and effect. We think the acceptance of the deed and of the privileges thereunder devolved upon the railroad company the absolute duty to keep open and maintain these crossings, and it must be held to its contract, even if it were necessary so to do to reduce its grade so that the easements acquired and retained, valuable as they are alleged to be by the complainant, may be freely exercised.

We think the court below was correct in overruling the demurrer, and the cause is therefore affirmed and remanded.

*Affirmed and remanded.*