GULF, MOBILE & OHIO R. R. Co. *v.* TALLAHATCHIE
DRAINAGE DIST. OF UNION COUNTY.

Nov. 2, 1953

No. 38906 41 Adv. S. 14 67 So. 2d 528

*Hugh N. Clayton,* New Albany, for appellant.

*Edgar J. Stephens, Jr.*, New Albany, for appellee.

McGehee, C. J.

This is an appeal from a decree of the Chancery Court of Union County which disallowed the claim of the appellant, Gulf, Mobile & Ohio Railroad Company, for $8,262.00 as damages on account of the cost of reconstructing its railroad bridge across a drainage canal which was being broadened and deepened by the appellee drainage district, and which decree confirmed and approved an assessment of $200.00 against the railroad company for its part of the cost of re-establishing the drainage system of the district on which there had been no maintenance work since shortly after the district was organized in 1913.

On March 28, 1951, the Commissioners of the appellee Tallahatchie Drainage District of Union County submitted to the chancery court of that county a report and petition, styled "Petition for Approval of Additional Improvements" to the drainage system of such district. The petition set forth the fact that the said district was organized under the provisions of Chapter 39 of the Mississippi Code of 1906, and the laws amendatory thereof and supplementary thereto, by a decree of said court on February

10, 1913; that the district as thus organized had an area of 19,738 acres; that the benefits then assessed against the lands were in the amount of $296,872.56, and that the total cost of the project at that time was $148,436.28; and that bonds in the amount of $93,000.00 were issued, maturing from May 1, 1914, to May 1, 1933, inclusive. They further alleged that during the year 1921, other lands were added to the original area to be drained, and that benefits were also assessed against such added territory and additional bonds issued to pay the additional cost thereby incurred; and that several years prior to the filing of the petition herein, on March 28, 1951, for the approval of additional improvements all of the assessed benefits were fully paid for by the landowners, and all of the bonds fully discharged.

The petition further alleged that there has been no maintenance of the drainage system since its original construction; that the main channel or canal of the drainage system as established in 1913 ran a distance of approximately 27 miles from the Tippah-Union County line in a southwesterly direction through and across Union County; that this main canal and its tributaries provided excellent drainage for a period of about twenty years after the drainage system was constructed, but that thereafter the same became filled with silt and sand to such an extent that the drainage system had ceased to function as such; and that during the year 1950 the United States Soil Conservation Service prepared new plans and specifications and other data, in the place and stead of the original ones which had been lost, and submitted the same to the commissioners of the drainage district along with a map of the suggested improvements of the drainage system and an estimate of the probable cost thereof, showing that the proposed program was estimated to cost $570,073.00, of which the United States Government was to pay $342,045.00 and the drainage district was to pay the remaining $228,030.00.

At the time of the organization of the district in 1913, the New Orleans, Mobile & Chicago Railroad Co., predecessor of the Gulf, Mobile & Ohio Railroad Co., had its line of railway extending through Union County, and the same was crossed by the main channel of the drainage district about one mile north of the Town of New Albany in said county. The drainage commissioners on February 10, 1913, made their report to the chancery court as to the proposed construction of the drainage system, for confirmation and approval, after notice to all persons interested.

The commissioners had assessed the then railroad company with the sum of $4,000.00 on the assessment rolls of the district; and it appears that when the matter of confirming this assessment came on to be heard before the chancellor on July 16, 1913, the railroad company was contesting the assessment, and was making a claim for damages on account of having to temporarily remove and thereafter replace its railroad bridge where its right of way extended over the depression or stream to be followed by the main channel or canal of the drainage system, about one mile north of the Town of New Albany as aforesaid. Thereupon a decree of the court was entered by agreement between the commissioners of the drainage district and the railroad company to the effect that in consideration of said railroad company agreeing to remove that part of its railroad bridge near New Albany where the main drainage canal was to pass under the same, and to thereafter replace the bridge, all at its own expense, it was to be relieved of the $4,000.00 assessment for taxes that had been levied against it by the drainage district, and that in turn the drainage district would be relieved of any and all claims for damages resulting to the railroad on account of the removal and replacement of its said bridge.

This consent decree contained a recital that the railroad had agreed to remove its bridge ''at such suitable

time and in such a way as * * * to enable the contractor digging said canal to dig the same across the right of way of said railroad company and without unnecessary delay, * * *.'' The decree therefore had the effect of granting unto the district the right to excavate its proposed main canal across the right of way and of a width and depth called for by the original plans and specifications that were approved by the chancery court for the construction of said canal, and to do so at the place where the railroad bridge was then located.

The petition of March 28, 1951, styled ''Petition for Approval of Additional Improvements,'' further alleged that the report of the United States Soil Conservation Service, attached as Exhibit ''A'' to the petition, sets forth the work necessary for the preservation of the drainage system of the district ''and enlargement of the Tallahatchie canal,'' which is the canal crossed by the railroad's right of way and the bridge in question; and the petition alleges that a sufficient number of landowners in the district had petitioned for this proposed improvement program.

The petition then alleged that it was necessary that the ''improvement program be instituted''; that the proposed program ''has been carefully prepared over a period of more than two years * * * ''; that ''new and additional benefits will accrue to the lands of the district from the construction of the said proposed improvements; and that the said new and additional benefits should be assessed against the lands of the district upon the approval of the proposed program; * * *.''

The report of the United States Soil Conservation Service, attached as Exhibit ''A'' to the ''Petition for Approval of Additional Improvements,'' recites that the main canal as originally constructed was approximately 27 miles long, and ''15 feet deep with 65 foot bottom width at the lower end and graduated to 8 feet deep with 20 foot bottom width at the upper end of the drainage

district"; that "there has been no maintenance work on the present channel (or main canal) since it was constructed. Vegetation on the banks is large and dense. * * * The present channel * * * should be enlarged from Sardis Reservoir boundary upstream * * * a distance of about 25 miles * * *."

The report further states that Lappatubby Creek, a tributary of the main canal, with its own tributaries Okonatie and Cherry Creeks should be relocated and a new channel constructed for a great portion of the distance traversed by the same; that the main canal "needs improvement from the Sardis Reservoir property up to the Tippah County line. The enlargement ranges from no deepening of the present channel at the Tippah County line to widening the present bottom to a width of 75 feet and depth of 20 feet at the Lafayette-Union County line (which is the lower end of the Tallahatchie Drainage District of Union County). This extensive dredging operation will require a considerable clearing (of willow and other growth) along both banks, as the excavation should be made from both sides of the channel. The exposed banks are then to be planted in Kudzu the next planting season."

The report further states that material excavated from drainage channels should not be deposited closer than 20 feet to the channel being excavated, except under certain conditions; that inlet channels should be excavated to the same depth as the main ditch for the distance shown on the plans and specifications submitted by the said Soil Conservation Service; and that the "present right of way of the main channel will not be sufficient to provide adequate space for the spoil banks." There is then submitted in detail a proposal for increasing the width of the main channel as originally constructed.

Then on February 14, 1952, the commissioners of the drainage district filed a further petition "for approval of amended plans and specifications for the proposed

improvement program, for the assessing of additional benefits against the lands of the district, for the issuance and sale of bonds of the district to defray the costs and expenses thereof, and for the levying of taxes for the payment of said bonds and interest and for unforeseen contingencies.''

In this supplemental petition the commissioners asked the court for authority to issue bonds in the sum of $228,030.00 and to assess new and additional benefits against the lands and railroads of the district to be benefited by the construction work. In other words, the proposed improvement program was to consist of more than merely cleaning out the original main canal and its tributaries, since it was contemplated that new benefits would accrue to the land from the expenditure of $570,-073.00, whereas if the program was to consist of merely cleaning out the main canal and its tributaries there would have been no new benefits but merely a restoration of the benefits which accrued under the original construction in 1913, and which had been lost to the landowners by reason of the failure of the drainage district to maintain the original drainage system. The program contemplated building a drainage system in 1951 and 1952 in the place and stead of the one constructed in 1913, which had become almost non-exi,tent; its former canals had to be located by soundings every half mile on the original routes, and the new plans and specifications had to be drawn without reference to the original ones that had become lost.

Therefore, the drainage commissioners on February 14, 1952, submitted to the chancery court along with their original and supplemental petitions ''a special report showing manner of passing through railroad rights of way'' pursuant to Section 4619, Code 1942, which provides among other things that: ''If in the organization of any drainage district *and thereafter* in the construction of ditches or drains, or *other improvements,* it shall

be necessary to cross under or through any railroad or the right of way thereof, the same may be accomplished in the following manner: Upon filing of the report of the commissioners as to assessments and benefits and damages, they shall make a special report showing the proposed plans, manner and character of the work as proposed in passing through such right of way, together with an estimate of the costs of same, including all damages that will be sustained by the railroad by virtue of the construction of the proposed work; and upon the hearing of such commissioners' report it shall be the duty of said railroad company, to appear and show cause why said report should not be confirmed as other parties interested are required to appear and on the same notice. In such showing it shall be the duty of the railroad company to file with the court, on or before the time set for the hearing, its estimate of the costs of the proposed work, including all damage that will be sustained by it by doing the proposed work, and the court or chancellor in vacation shall determine the amount of such costs and damages to the railroad, and said finding shall be final and conclusive adjudication of such matters, unless appealed from in the manner provided for appeals under this chapter.'' (Italics ours.)

Pursuant to the provisions of the said statute the appellant Gulf, Mobile & Ohio Railroad Company filed a petition and claim for damages in the sum of $8,262.00 representing only the actual cost to the railroad company of extending the length of its trestle over the main canal to conform to the widening of the bottom of such canal from 43 feet to 45 feet and to the sloping of the banks thereof in the ratio of one and one-half feet horizontal to one foot vertical from the bottom of each bank to the top thereof, a distance of 22 feet on each side, as required by the said improvement program of the drainage district. An itemized statement of the cost to the railroad company for extending the length of its bridge and the

length of its piers and bents of piling, and of constructing two additional piers and two additional bents, etc., was attached to the claim of the railroad company and the correctness thereof was established without dispute in the testimony offered at the hearing.

In the special report of the commissioners of this improvement program it was stated that they had assessed the railroad company with the sum of $200.00 to cover the cost of deepening the canal to the extent of 6 feet and of widening the same to the extent of 2 feet and for excavating the banks in the manner aforesaid, in crossing the railroad right of way; and it was further stated in the report that no damage would result to the railroad from said work.

In the claim filed by the railroad company and its exceptions to the report of the commissioners, the right of the district to make this assessment of $200.00 is not specifically challenged, and therefore under the state of the pleadings the chancellor was justified in approving this $200.00 assessment. Moreover, Section 4621, Code 1942, appears to authorize the making of such assessment.

In answer to the petition and claim of the railroad company for the $8,262.00 as damages that was occasioned by the reconstruction of its bridge in the manner hereinbefore stated, the drainage district set forth as a defense the consent decree of February 16, 1913, and alleged that by reason thereof the drainage district had acquired an easement across the railroad right of way at the point in question and that it had the right to deepen and broaden the canal to any extent that was reasonably necessary to cause the same to serve the purpose for which the easement was obtained, so long as the work was done within the extent of the width of the easement. In support of such contention the appellee drainage district cites the case of Moore v. Swamp Dredging Co., 125 Miss. 842, 88 So. 522, and the other decisions of this Court therein cited and quoted from;

and also 17 Am. Jur., Sec. 27, page 940, and 28 C. J. S., Sec. 24, page 676. On the other hand, the appellant railroad company relies upon the case of Lanier v. Booth, et al., 50 Miss. 410; 19 C. J., Sec. 91, page 906; 28 C. J. S., Sec. 30, page 686; 17 Am. Jur., Sec. 32, page 944, which announce the rule as to how an easement may be acquired. The appellee drainage district contended that it held the easement by an express grant. The trial court held that the drainage district acquired the easement at least by implication.

 The Lanier case, supra, recognized three modes by which easements may be acquired, namely: by express grant, implied grant, and prescription, which presupposes a grant to have existed, and being an interest in land, an easement can be created only by granting, and may be shown by the production of a deed expressly declaring it, or may be inferred by construction from the terms and effect of an existing deed. However, the opinion further recognized that evidence of the grant may be derived from its having been so long enjoyed as to be regarded as proof that a grant was originally made though no deed is produced which creates it; and that further, ''an easement may be created by or reserved by an implied grant when its existence is necessary to the enjoyment of that which is expressly granted or reserved, upon the principle that where one grants anything to another he thereby grants him the means of enjoying it whether expressed or not.''

The quotation relied upon by the appellant from 19 C. J., supra, while stating in general that a grant of an easement must contain all the formal requisites of a grant of land, and should be certain and definite in its terms, further states that: ''No particular words are necessary to constitute a grant, and the words ought clearly show the intention to give the easement, which is by law grantable, or sufficient to effect that purpose.'' The quotation from 28 C. J. S., supra, relied upon by the

appellant, declares that the law does not favor easements by implication, although the same may be so created, depending on the intent of the parties. And it is stated in 17 Am. Jur., supra, that the exact scope of the doctrine of implied easements in the United States is uncertain, and that as a general rule the tendency of the courts is to discourage implied grants of easements.

 Nevertheless, we are of the opinion that the consent decree of February 16, 1913, by its very terms, had the effect of clearly recognizing the right of the drainage district to dig the canal across the right of way of the predecessor of the appellant railroad, but we think it is also true that the same was necessarily intended to be in accordance with the plans and specifications then before court for the digging of such canal, as to width and depth and which width was used in bridging the canal from 1913 until the filing of this proceeding in 1951, no particular width of the easement having been specified in the said consent decree.

But assuming that the drainage district had prior to the rendition of said decree acquired a right of way 100 feet in width across other lands in the district, there is no proof contained in this record other than the consent decree that it had previously acquired a right of way across the right of way of the railroad company, either 100 feet in width or less. The case is therefore distinguishable from the case of Moore v. Swamp Dredging Co., supra, and the cases therein cited, the philosophy of which is that the defendant in each of those cases had fully paid for the strip of land on which the work was being done and that the purchase price covered all damages that should ever result from a proper use of the same for the purposes for which the easement was acquired.

In the instant case, if we assume that the original plans and specifications which have been lost for many years had specified the width and depth of the main canal in

question, then it would follow that the cancellation of the $4,000.00 assessment against the predecessor of the appellant railroad company in consideration that the railroad company would release its claim for damages caused by the temporary removal and later replacement of its bridge would not compensate the railroad company for damages that might be occasioned in the future by having to lengthen its bridge and the piers and piling that supports the same from time to time when the drainage district should determine to deepen and broaden the canal, at a great expense to the appellant railroad company, within the extent of such right of way. Such could not have been within the contemplation of the parties or of the chancellor who signed the consent decree in 1913.

After a lapse of 32 years from the time of the original construction of this canal, and after it had become filled with silt and sand due to the fact that no maintenance work had been done for that long a time, the railroad company in 1945 improved its bridge in the interest of the safety of public travel by placing a steel span of a length of 41 feet and 2 inches across the canal and by building the necessary approaches thereto. The deepening and broadening of the canal as proposed in 1951 and the excavation of dirt from the banks thereof as hereinbefore mentioned was the sole and proximate cause of the railroad company having to build the two additional piers and the two additional bents under the bridge and lengthen the same at the cost of $8,262.00 which represented a damage not theretofore compensated for under the consent decree of February 16, 1913; and we are therefore of the opinion that when the chancellor found as a fact, contrary to the report of the commissioners, that the deepening and broadening of the canal would necessitate the doing of such work as was necessary to cause the bridge to conform to the new situation thereby produced, it then followed that the claim of the appellant

railroad company for the amount of this extra cost should have been allowed.

The theory upon which the claim was denied was that Section 4619, Code of 1942, is not applicable to the case presented here, upon the ground that the proposed construction program was to consist merely in cleaning out the original canal, and not the making of improvements. It was upon that theory that he held that the loss to the railroad company was damnum absque injuria; and the claim was therefore disallowed and the $200.00 assessment against the railroad company was approved.

We are of the opinion that Section 1721, Code 1906, providing for compensation to a railroad company for damages sustained by it when a drainage canal crosses under or through any railroad or the right of way thereof applies only to damages caused by the original construction but that the amendment of that statute by Chapter 196, Laws of 1912, (Section 4619, Code 1942), caused the same to apply both in the organization of any district "and thereafter in the construction * * * of other improvements, * * * "; that the words "and thereafter" and the words "other improvements" were inserted in the statute solely for the purpose of enabling a railroad company to recover not only damages caused by the original construction but to recover such additional damages that may be caused by improvements subsequently made to the drainage system.

The decree must therefore be affirmed as to the approval of the $200.00 tax assessment against the railroad company in connection with the improvement program as proposed in 1951, but reversed as to the disallowance of the $8,262.00 claimed as damages by the railroad company in connection with the carrying out of such improvement program; and that a judgment be rendered here in favor of the appellant railroad company for said damages.

Affirmed in part, reversed in part, and judgment here accordingly.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.