The STATE of Texas, Petitioner,

v.

E. T. FULLER, Jr. et al., Respondents.

No. A–11107.

Supreme Court of Texas.

Oct. 5, 1966.

Rehearing Denied Nov. 2, 1966.

Weller, Wheelus & Green, Beaumont, for E. T. Fuller, Jr., and others.

Strong, Pipkin, Strong & Nelson, T. Turner Pope and Pike Powers, Beaumont, for Minnie B. Justus.

Carl R. Griffith and J. S. Maida, Jr., Beaumont, for Edna Brooks and others.

W. G. Walley, Jr., Beaumont, for State.

WALKER, Justice.

This is an action to determine the surface ownership of the west one-half of a 680.55-foot segment of an abandoned railroad right-of-way. The competing claimants are: (1) the State of Texas, which owns the surface of the land occupied by U. S. Highway 69, west of and adjoining the strip in controversy; (2) E. T. Fuller, Jr. et al, hereinafter referred to collectively as the Fullers, who own the land east of and adjoining the railroad right-of-way; and (3) Edna Brooks et al, hereinafter referred to collectively as the Brooks, who own the land west of and adjoining U. S. Highway 69. Title to the minerals is not in issue, and the Fullers are recognized to be the surface owners of the east one-half of the abandoned railroad right-of-way adjoining their property.

An action in trespass to try title and for a declaratory judgment was instituted by the State against the other claimants, and the trial court rendered summary judgment

in favor of the State. This judgment was modified by the Court of Civil Appeals to include a declaration that the Fullers, as owners of the land east of the strip in controversy, have a right of access to Highway 69, and as so modified the judgment of the trial court was affirmed. 394 S.W. 2d 203. Applications for writs of error were filed by the State, the Fullers and the Brooks, and all applications were granted. It is our opinion that the judgment of the trial court was correct and should be affirmed.

The following plat will be of assistance in understanding the situation and contentions of the parties:

John J. French is the common source of title to all of the land shown on the plat. By deed dated September 9, 1880, he conveyed to East Texas Railway Company a railroad right-of-way easement 100 feet in width. Some nine years later he conveyed the land east of and adjoining the railroad right-of-way to Mrs. C. C. Blanchette. The Fullers acquired title to an 8-acre tract, which adjoins the railroad right-of-way on the east for a distance of 680.55 feet, through and under Mrs. Blanchette. The deeds in this chain of title purport to convey land bounded on the west by the east line of the railroad right-of-way. Fee simple title to the remainder of the land shown on the plat passed, subject to the railroad easement, from John J. French to Mrs. Edna French. On May 15, 1937, she conveyed the right-of-way for State Highway 40, later U. S. Highway 69, to the State of Texas. This conveyance was by general warranty deed, but all minerals were reserved to the grantor. It describes a strip of land 130 feet wide and 1509 feet long lying west of and adjoining the railroad right-of-way. Several small tracts immediately west of the highway were subsequently conveyed by Mrs. French to the Brooks or their predecessors in title. The railroad abandoned its right-of-way in 1961.

■ It is well settled that a deed to land abutting on a railroad right-of-way conveys title to the center of the right-of-way unless the contrary intention is expressed in the instrument. Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391; Joslin v. State, Tex. Civ.App., 146 S.W.2d 208 (wr. ref.). Under this rule the Fullers became the owners, subject to the easement, of the east one-half of the railroad right-of-way adjoining their 8-acre tract. Their title thereto, which ripened into absolute ownership when the right-of-way was abandoned, is not disputed by either the Brooks or the State.

The State relies upon the rule just mentioned as the basis of its claim to the west one-half of the railroad right-of-way, while the Brooks insist that this case is governed by the exception recognized in Haines v. McLean, 154 Tex. 272, 276 S.W.2d 777. There we were concerned with the title to the minerals underlying three adjoining easements which ran in a general northerly and southerly direction. The Boothe plaintiffs held under a deed purporting to convey the land east of and adjoining the most easterly strip in controversy, and the land west of the disputed strips passed to the Haines heirs. The latter then conveyed to Scurry County the right-of-way of U. S. Highway 84, which lay immediately west of and adjoining the most westerly of the three strips.

We recognized in *Haines* that the deed to Scurry County conveyed at least a determinable fee. The instrument recited, however, that the conveyance was in the nature of a donation for highway purposes only, and stipulated that the property would revert to the grantors in the event it ceased to be used for such purposes. It was held that the minerals under the east one-half of the three strips were owned by the Boothe plaintiffs, and that the minerals under the west one-half were owned by the Haines plaintiffs. In rejecting the contention that title to part of three strips was outstanding in Scurry County, we said:

"Whether we rationalize our conclusion on the theory that the restrictive language of the deed [to Scurry County] in the light of attendant circumstances amounted to an 'express reservation' of the easement area under the rule as stated in Rio Bravo, Cox and Joslin cases, or simply refuse to apply the result of those decisions to a new situation where it seems unnatural to apply it, or say that here the additional area in question cannot realistically be called an appurtenance of the strip conveyed to Scurry County, our conclusion appears to us the more just solution of the problem."

Here we are concerned only with the surface of the strip in controversy, and no minerals are involved. The deed from Mrs. Edna French to the State, the relevant portions of which are quoted in the margin,[1] was executed for a recited consideration of $2,056.50 paid in cash. All oil, gas and other minerals were reserved to the grantor, but the instrument contains no other restriction or reservation. It purports to "grant, bargain, sell and convey" the land therein described, which adjoins the railroad right-of-way on the west, and includes a covenant of general warranty. We agree with the Court of Civil Appeals that the *Haines* exception is not applicable under these circumstances, and that the case is governed by the general rule mentioned above. See Bowers v. Atchison, T. & S. F. R. Co., 119 Kan. 202, 237 P. 913, 42 A.L.R. 228.

The Fullers say that the deed from Mrs. Edna French to the State conveyed only an easement, and argue from this premise that they are entitled to the east one-half of the combined highway and railroad strips, which would give them all of the former railroad right-of-way. They cite Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268, where the railroad company was held to have acquired merely an easement under a deed purporting to convey to it "for the purpose of constructing, operating and maintaining its railroad, the right of way, two hundred feet in width, over and upon the above described land." In support of their contention that the deed in the present case should be given the same effect, the Fullers point out that the instrument is characterized on its face as a "Right of Way Deed." It recites that "the lands herein conveyed is a strip * * * lying within the limits of the right of way of Proposed State Highway No. 40," and that the grantor intended to convey all land owned by her "within the above described limits." It also appears that the property was acquired by the State for highway purposes with the proceeds of a road bond issue, and would doubtless have been taken under the power of eminent do-

---

1.                               RIGHT OF WAY DEED

STATE OF TEXAS ⎫
                           ⎬  KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF JEFFERSON ⎭

That Mrs. Edna French * * * for and in consideration of the sum of Two Thousand Fifty-six and 50/100 ($2,056.50) Dollars to her in hand paid by the State of Texas * * * have this day sold and do by these presents grant, bargain, sell and convey unto the State of Texas, all that certain tract or parcel of land situated in the County of Jefferson, State of Texas * * * more particularly described as follows, to-wit:

The land herein conveyed is a strip out of the T. A. French 32.6 acre tract in the A. Williams Survey * * * said strip of land lying within the limits of the right of way of the proposed State Highway No. 40 in Jefferson County, Texas, as surveyed by the Division Engineer of the State Highway Department of Texas, and being of such width that the right of way contained on East side of the centerline of said Highway No. 40 shall be seventy (70') feet and on the West side sixty (60') feet: the centerline

being more particularly described as follows:

     *          *          *          *          *

It being the intention in this deed to convey to the State of Texas, all the land now being owned by me/us within the above described limits and containing 4.50 acres of land.

There is reserved, however, to the Grantor herein all oil, gas and other minerals on in and under the land hereby conveyed.

     *          *          *          *

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and hereditaments thereunto in anywise belonging unto the said State of Texas, and its assigns;

And I/we hereby bind my/ourselves, my/our heirs, executors and administrators to forever warrant and defend the rights and title to said premises unto the said State of Texas, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

     *          *          *          *          *

main if Mrs. French had been unwilling to sell at a price agreeable to the condemning authority.

■■ In our opinion there is no merit in the basic premise thus urged by the Fullers. The deed from Mrs. French to the State shows clearly that it was her intention to convey not merely an easement but fee simple title to the land described, subject only to the mineral reservation. The interest passing thereunder is determined by the terms of the conveyance, and the grantee's estate is not restricted or impaired by the purposes for which the property may lawfully be used or by the fact that the same was acquired under threat or in lieu of condemnation. We hold that fee simple title to the west one-half of the railroad right-of-way adjoining the property described in such deed is vested, subject to the mineral reservation, in the State.

■ The Fullers also contend that the courts below erred in failing to declare that the west one-half of the railroad right-of-way may be used by the State only for highway purposes. It does not appear that the State contemplates using the property for any other purpose, and there is no justiciable controversy to warrant a judicial declaration of the uses to which the land may properly be devoted. This brings us to the holding of the Court of Civil Appeals that the Fullers, as owners of the east one-half of the railroad right-of-way adjoining their 8-acre tract, have a right of access to Highway 69. The State plans to use all of the railroad right-of-way for highway purposes, and has instituted condemnation proceedings to acquire the east one-half owned by the Fullers. It is to their interest, therefore, to establish that the ownership of such strip carries with it the right of access to the highway.

Prior to abandonment of the railroad in 1961, the Fullers occasionally parked their vehicles on the highway and walked across the tracks to their property. It does not appear, however, that they ever acquired a legal right to cross the right-of-way where it adjoins their 8-acre tract for access to the latter from the highway. Their claim of access to the highway is as abutting owners. Since the west one-half of the railroad right-of-way was acquired by the State with the proceeds of bonds issued for the purpose of constructing, maintaining and operating roads, they insist that such property can be used by the State only for highway purposes. We assume without deciding that they are correct in that contention. This, the Fullers then say, makes the west one-half of the railroad right-of-way part of the highway, and entitles them, as the owners of the east one-half, to the rights of abutting owners. We do not agree.

"A least one case has recognized quite frankly that '[t]he precise origin of [the concept of access rights] is somewhat obscure but it may be said generally to have arisen by court decisions declaring that such right existed and recognizing it.' Bacich v. Board of Control, 23 Cal.2d 343, 144 P.2d 818, 823 (1943). * * * Early road construction was by local citizens as well as for local use, and almost all highways or roads were for the purpose of 'land service.' Moreover, the abutters often donated the land, labor, and materials necessary to the road construction and maintenance, and in view of this, it seldom occurred to anyone to attempt to deny their right to use the road for ingress and egress. Whatever its origin, the right is now clearly established as a concomitant of ownership of land abutting on a highway. See Covey, Control of Highway Access, 38 Neb.L.R. 407 (1959); Duhaime, Limiting Access to Highways, 33 Ore.L.R. 16 (1953); 25 Am. Jur., Highways § 154." State v. Meyer, Tex.Sup., 403 S.W.2d 366, 370.

■■ The term "abutting owner," when used in relation to highways, ordinarily refers to one whose land actually adjoins the way, although it is sometimes used loosely without implying more than a close prox-

imity. See Black's Law Dictionary, 3rd ed. 1944; 25 Am.Jur. Highways § 153. Here the State has acquired, perhaps unwittingly, a strip of land which, according to the Fullers, it can use only for highway purposes. That did not, however, make the property part of the highway. If the additional land were not needed for highway purposes, it could be sold by the State as authorized by Article 6673a, Vernon's Ann.Tex.Civ.Stat. The responsible officials evidently expect to widen the highway to include the strip in controversy as well as the adjoining 50 feet owned by the Fullers, but a public way has not yet been established on the State's half of the former railroad right-of-way. At the present time, therefore, the Fullers do not own land abutting on the highway and have no right of access thereto across the tract awarded to the State in this action.

The judgment of the Court of Civil Appeals is modified so as to affirm the judgment of the trial court, and as so modified is affirmed.