The STATE of Texas, Appellant,

v.

E. T. FULLER, Jr., et al., Appellees.

No. 7140.

Court of Civil Appeals of Texas, Beaumont.

Feb. 12, 1970.

Motion for Rehearing Overruled March 5, 1970.

W. G. Walley, Jr., Beaumont, for appellant.

Weller, Wheelus, Green & Brocato, Beaumont, for appellees.

KEITH, Justice.

We have the sequel to State vs. Fuller reported in 407 S.W.2d 215 (Tex.Sup., 1966), this being the appeal from the judgment in the condemnation proceedings involving the east one-half of the abandoned railroad right-of-way discussed in the prior opinion. The plat to be found on page 217 of the reported opinion will be helpful in following our discussion. The parties are not in dispute as to the first holding of the Supreme Court: the State owned the fee to the west one-half of the abandoned railroad right-of-way which was not *then* a part of the highway and which could be disposed of as surplus property if not needed for highway purposes. Article 6673a, V.A.C.S.

Our dispute centers over the other facet of the decision by the court, the right of access of the east one-half of the right-of-way to the highway. The question is of paramount importance and underlies the appeal which we now consider. On the trial below, Fuller's witness, Williamson, basing his opinion upon the fact that the tract did in fact have access to the highway, valued it at $34,028.00. The verdict was for this exact amount. The State's only witness, Hall, refusing to concede that the property had a right of access, was not permitted to give his opinion. Upon the bill of exception, however, Hall said that the land had a value of only $3,275.00. Neither party challenges the qualification of the other's witness.

At the outset, the trial court overruled a portion of the State's motion in limine which would have precluded any offer of testimony of the value based in any degree upon assumption that the tract had access to the highway, specifically calling to the court's attention the language of the Supreme Court upon which such motion was based, and invoking the doctrine of res adjudicata. Another paragraph of the motion would have precluded the admission of any testimony of an enhancement of value of the strip because of the work the State

was then doing on the nearby highway. Upon the hearing on the motion, the court received into evidence the pleadings of the prior trial, and a portion of the motion for rehearing which the Fullers filed in the Supreme Court.

■ While we could take judicial notice and knowledge of the record in our prior case since the same parties are before us again (1 McCormick & Ray, Texas Law of Evidence, § 185, p. 205), we have reviewed the instruments appearing in this record in an effort to determine just what issues were tendered in the first trial upon which the judgment was pronounced.

In the fourth count found in Fuller's cross action, he sought a declaration of rights as to the easterly half of the abandoned railroad right-of-way, these being his words:

"  *   *   * [The Fullers] are entitled to have this court decree and declare that the State of Texas and the County of Jefferson cannot use said 50 feet [referring to the westerly 50 feet of the railroad right-of-way] for any purpose other than highway purposes *and they are likewise entitled to have this court decree that the adjoining property of the cross-plaintiffs* [the easterly 50 feet of the railroad right-of-way now involved in this condemnation suit] *shall adjoin the right-of-way or the roadway of the State of Texas, or any roadway improvement to be constructed by the State of Texas.*"[1] (Bracketed matter and emphasis supplied.)

The prayer of the cross action followed the allegation set out above. The trial court's judgment, affirmed by the Supreme Court, was clear and precise, stating:

"It is further, ORDERED,  *   *   * that all relief prayed for by the defendants and cross-plaintiffs, E. T. Fuller [et al]  *   *   * in their first amended

answer and cross-action and in their reply to plaintiff's motion for summary judgment, be and the same is hereby in all things denied."

In the course of his opinion, Justice Walker came to consider the contention of the Fullers predicated upon the fourth count in the cross action heretofore quoted, saying:

"The State plans to use all of the railroad right-of-way for highway purposes, and has instituted condemnation proceedings to acquire the east one-half owned by the Fullers. *It is to their interest, therefore, to establish that the ownership of such strip carries with it the right of access to the highway.*" (407 S.W.2d at p. 220, emphasis supplied.)

Noting that the State had acquired, "perhaps unwittingly," the strip of land, such fact "did not, however, make the property a part of the highway." Justice Walker then spoke for the court, saying:

"The responsible officials evidently expect to widen the highway to include the strip in controversy as well as the adjoining 50 feet owned by the Fullers, but a public way has not yet been established on the State's half of the former railroad right-of-way. *At the present time,* therefore, the Fullers do not own land abutting on the highway and have no right of access thereto across the tract awarded to the State in this action." (407 S.W.2d at p. 221, emphasis supplied.)

The italicized words, "at the present time," form the basis of the dispute between the parties. The State, in effect, contends that the judgment in the declaratory judgment action is res adjudicata. On the other hand, the Fullers contend that the words are confined to the conditions that existed at the time of the entry of the judgment in the declaratory judgment ac-

1. We note, particularly, the last phrase tendering the issue of adjacency to any roadway to be constructed in the future by the State over its half of the railroad right-of-way.

tion, not as they may have existed at the time of taking of the property in this proceeding.

The Fullers filed their motion for re-hearing in the Supreme Court saying:

"Petitioners [Fullers] would earnestly and respectfully request that the Supreme Court of Texas reconsider the opinion in this case. If the Supreme Court feels that there is no justiciable controversy to warrant a judicial declaration of the uses to which the land may be properly devoted, let the opinion stop at this point. Petitioners urge this Court not to make a blanket determination, unlimited in time, that Fuller has no access to the highway from the east one-half of the abandoned railroad right-of-way. Particularly, do not make this determination, *when the old condemnation suit was dismissed and a new suit was filed on January 4, 1965*."[2] (Emphasis supplied.)

The prayer to the motion asked "that the opinion of this Court as to the access question be limited as to the time of the trial of this cause and not extend for any indefinite period." The issue which we now face was thrust upon the Supreme Court in as precise language as skilled counsel could draft. The answer was equally clear; the motion was overruled without altering the holding complained of by the Fullers.

■ In our consideration of the doctrine of res adjudicata, we note that apparently the doctrine of merger[3] is inapplicable to declaratory judgment decrees. The reason for and the rule itself are both set forth in

the Restatement, Judgments, § 77, Comment b, at p. 344:

"Where a plaintiff seeks a declaratory judgment, he is not seeking to enforce a claim against the defendant. He is seeking rather a judicial declaration as to the existence and effect of a relation between him and the defendant. The effect of the judgment, therefore, unlike a judgment for the payment of money, is not to merge a cause of action in the judgment or to bar it. The effect of a declaratory judgment is rather to make res judicata the matters declared by the judgment, thus precluding the parties to the litigation from relitigating these matters."

See also, 10 A.L.R.2d 782, 787, and cases therein cited.[4]

■ We now consider the prior judgment as an estoppel in bar to the question presented by this appeal and note that the Uniform Declaratory Judgments Act (Article 2524–1, V.A.C.S.) specifically provides: " * * * such declaration shall have the force and effect of a final judgment or decree." Accepting this as our major premise, we first review some of the decisions relating to judgments rendered in an ordinary suit, i. e., one not arising out of the statutory procedure. One of the leading cases is Swilley vs. McCain, 374 S.W.2d 871, 874 (Tex.Sup., 1964), from which this quotation is taken:

"After a question of law or an issue of fact has been litigated and adjudicated in a court of competent jurisdiction, the same matter cannot be relitigated in a subsequent suit between the same parties

---

2. The italicized language was foreign to the record in the Supreme Court, the trial court judgment in the first case being dated October 26, 1964.

3. "Under the doctrine [of merger], it may be stated quite generally that a cause of action which is reduced to judgment is merged into the decree." Kulow vs. Farmers Royalty Holding Co., 144 Tex. 312, 190 S.W.2d 60, 61 (1945). See also 50 C.J.S., Judgments, § 599, p. 20,

et seq.; 46 Am.Jur.2d, Judgments, § 382, p. 551, et seq.; 34 Tex.Jur.2d, Judgments, § 443, p. 484, et seq.

4. The only case by our Supreme Court upon the subject which we have found does not appear too helpful in our determination of the issue presented by the parties. See Sabine River Authority vs. Willis, 369 S.W.2d 348, 350 (Tex.Sup., 1963).

or those in privity with them. This is by virtue of the doctrine of res judicata, which thus extends to both questions of law and issues of fact but binds only the parties to the first suit and those who claim under them. It may not be invoked by one who is not bound by the judgment in the earlier proceeding. See Kirby Lumber Corp. v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 169 A.L.R. 174; Read v. Allen, 56 Tex. 182; 30A Am.Jur. Judgments § 324 et seq."

As to the state of facts which will authorize the interposition of the doctrine of res adjudicata, we refer to City of Lubbock vs. Stubbs, 160 Tex. 111, 327 S.W.2d 411, 414 (1959), from which this is taken:

"Estoppel by judgment extends only to facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties, where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties. See Fort Worth Stockyards Co. v. Brown, Tex.Civ.App., 161 S.W.2d 549."

In the prior suit the judgment was rendered by the court of competent jurisdiction having all of the proper parties before it and this judgment was affirmed by our court of last resort. The matter directly in issue in this appeal, the right of access was squarely presented to and determined in the prior appeal. Of the utmost importance, but not mentioned by the briefs, is the determination by Justice Walker that the State had the fee simple title to the westerly half of the abandoned railroad right-of-way which was not at that time a part of the highway system.[5]

The lack of access of Fuller to the highway was definitively and finally determined by the Supreme Court on October 5, 1966, but in our opinion, the determination related to the conditions as they existed upon the date of the judgment of the trial court, October 26, 1964. Cowling vs. Colligan, 158 Tex. 458, 312 S.W.2d 943, 947 (1958).

There does not seem to be a case similar to that confronting us. When the Supreme Court rendered its opinion, it knew and commented upon the fact that there was a condemnation proceeding pending and that the factor of access or lack thereof would have a vital bearing on the value issue which would be determined by the jury in the eminent domain case. The purpose of the judgment in the first case was to declare the "rights, status, or other legal relations" of the Fullers and the State with reference to the ownership of the abandoned railroad right-of-way. Section 2, Article 2524-1, V.A.C.S. The State never contended that it *owned the easterly half* of the old railroad right-of-way; instead, recognizing Fuller's ownership thereof, it had commenced condemnation proceedings to acquire it. Consequently, the *only* issue between the State and Fuller was money. The single most important factor bearing on this issue was the right of access and it was determined squarely and finally against Fuller.

It becomes important for us to determine whether or not the westerly 50 feet of the abandoned railroad right-of-way (that owned by the State) was being used as a part of the highway by the State at the time of the taking, August 19, 1965. From our record it appears without dispute that the State had originally intended to use the Fuller's strip as a part of the highway, an intention which it had formed many years previously. Such was so widely known that it was commented upon in Justice Walker's opinion. The fact of the matter is, however, on August 19, 1965, such strip was not then a part of the highway nor was it being used for highway

5. "If the additional land [the easterly 50 feet of the railroad right-of-way] were not needed for highway purposes, it could be sold by the State as authorized by Article 6673a, Vernon's Ann.Tex.Civ.Stat." (407 S.W.2d at p. 221).

purposes. The undisputed evidence shows that while a contract had been let for the construction of a lateral road on the State's half of the railroad strip and the contractor was preparing to pour concrete thereon on the day of the taking, the road under construction had not been opened for traffic by the general public nor had it been accepted by the State. Upon the date of the taking, August 19, 1965, " * * * a public way has [had] not yet been established on the State's half of the former railroad right-of-way." (407 S.W.2d at p. 221.) The strip taken was not, consequently a part of the highway system.[6] Driver vs. Worth Construction Co., 154 Tex. 66, 273 S.W.2d 603, 605 (1954).

The witness Hall, tendered by the State, confined his proposed testimony relating to value in accordance with a strict interpretation of Justice Walker's opinion in the prior appeal. Thus, he refused to take into consideration the construction then actually in progress upon the State's half of the former railroad right-of-way and the fact that in all reasonable probability the road would be opened to traffic within a few months, if not weeks after the date of the taking. Under his theory, only the fifty-foot northern strip of the Fuller portion of the railroad right-of-way had access to any street or road, i. e., it was abutting only on Pinkston Drive. This testimony was excluded by the trial court.

Under the record which we have, we are all in accord that it was error for the trial court to have excluded the testimony of Hall as tendered by the State in its bill of exception. For this reason, we reverse the judgment of the trial court and remand the cause for a trial in accordance with the views herein expressed.[7]

■ The majority of the court (the writer not concurring therein) is of the opinion that it was not error for the trial court to receive the testimony of Fuller's witness, Williamson, and that such testimony was properly received. Under the peculiar facts of this case, with the roadway already under construction, with the steel forms of the contractor in place to

---

6. The lateral road was "accepted" by the State on November 4, 1965, at which time a portion of the Fuller strip had been incorporated into the shoulder of the access road constructed upon the State's strip of the former railroad right-of-way.

7. The court permits the writer of the foregoing opinion to state the following in lieu of a formal dissent as to what follows. [See the procedure used by Justice Garwood in Shannon vs. Rogers, 159 Tex. 29, 314 S.W.2d 810, 816, fn. 4 (1958)].
As an original proposition, were we not confronted with the prior opinion of the Supreme Court and bound under the doctrine of res adjudicata, I would have no hesitancy in joining in the opinion in its entirety. I am, however, not convinced that the solemn declaration of the rights of the parties made in that opinion is to be treated as if it were an excursion ticket issued for passage one day only and of no value thereafter. The judgment of the Supreme Court affirmed the judgment of the trial court which, in turn had denied that the Fullers had access to or abutted on a highway.
Only three changes were shown between the date of the judgment of the trial court and the date of taking: (a) the State dismissed its pending condemnation suit but refiled it within a few days; (b) the State let a contract for the construction of a road upon its one-half of the former railroad right-of-way; and (c) the contractor was actively engaged in preparing his forms for the pouring of the concrete thereon. Upon these three "changes," the majority now disregards the second holding of the Supreme Court and permits Fuller to receive money for that which the court had said he did not own—access and abutting rights. Such was the force of Williamson's testimony; and, if it is received by another jury without limitation, we may expect a similar result to follow as we now review.
I would not only reverse this cause because of the exclusion of Hall's testimony as does the majority, but I would go further and hold that the trial court erred in not sustaining the State's motion in limine in its entirety, which would have excluded the testimony of Williamson. This, I submit, is required under the language of Justice Walker's opinion.

receive the concrete on the roadway the next day, it was only reasonable to assume that the roadway would be opened to the general public in a short time. Under these circumstances the case is ruled by City of Austin vs. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, 815 (1954), wherein Justice Calvert said:

" * * * if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, *within a reasonable time*, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available. Whenever such testimony is admitted it would not do violence to the definition of 'market value' suggested in the Carpenter case by adding thereto so as to have it read: You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, *taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.* This definition will permit the jury to give such weight to the probability of the lifting of restrictions as it thinks a prospective purchaser would give." (The first emphasis in this quotation has been supplied, the latter is by the Supreme Court.)

Certainly, a prospective purchaser, seeing the progress being made upon the frontage road, would have taken into consideration the fact that within a few weeks, the Fuller land would be adjacent to a paved road and part of the State highway system. This factor could be taken into consideration and given such weight as might be appropriate in arriving at the fair cash market value of the strip to be taken. This was Williamson's approach and the receipt of the evidence was not error.

Reversed and remanded.