246 So.2d 525 (1971)
James E. WARWICK, Complainant/Appellant/Cross-Appellee,
v.
PEARL RIVER VALLEY WATER SUPPLY DISTRICT, Defendant/Appellee/Cross-Appellant.
No. 46126.
Supreme Court of Mississippi.
April 5, 1971.
Opinion Modified on Petition for Rehearing June 18, 1971.
*526 Young, Young & Scanlon, Jackson, for complainant/appellant/cross-appellee.
Watkins, Pyle, Ludlam, Winter & Stennis, Robert H. Weaver, Jackson, for defendant/appellee/cross-appellant.
PATTERSON, Justice:
This is an appeal by James E. Warwick from a decree of the Chancery Court of Madison County which enjoined the Pearl River Valley Water Supply District from interfering with his access to a point on Harbor Drive Road. He contends that the lower court erred in not granting him unlimited access from his property to the District's road. The District cross-appeals contending that the lower court erred in granting Warwick any access to its road.
Warwick is the owner of approximately 47 acres of land "below the dam" in Sections 33 and 34, Township 7 North, Range 2 East, Madison County, Mississippi. (Detailed description omitted.) The land of Warwick was formerly a part of a larger tract consisting of 457 acres owned by Dr. Ben Walker, Jr. In 1960 the District instituted eminent domain proceedings against Walker in which it acquired 250 acres of the 457-acre tract. The northern boundary of the 250-acre tract acquired by the District was Rice Road. The 47-acre tract adjoins the condemned 250-acre tract on the south. Prior to the eminent domain proceedings, access to the 250-acre parcel, as well as the land now owned by Warwick but which was not then severed, was afforded by Rice Road.
The District subsequently built Harbor Drive Road upon the 250-acre tract. It extended from Rice Road in a southeasterly direction to the main dam of the reservoir. New Charity Church Road intersects Harbor Drive Road from the west. The intersection of these two roads is just east of the northwest corner of Warwick's land. Both New Charity Church Road and Harbor Drive Road are heavily traveled hard-surface public roads leading from Hinds and Madison Counties to the Barnett Reservoir dam, the top of which is a public road giving access to the public roads of Rankin County.
The blacktop surface of Harbor Drive Road consists of two 12-foot lanes. New Charity Church Road parallels the common boundary between the District's property and Warwick's property from the diversion ditch on the west to its juncture with Harbor Drive Road. Harbor Drive Road parallels the common boundary from the road juncture to the northeast corner of Warwick's property, a total distance of approximately 1200 feet. The distance between the center line of the roads and the common boundary line is 100 feet throughout this section of roadway. The distance from the southern edge of the paved portion of the road to the northern boundary of Warwick's property is 88 feet.
The portion of Harbor Drive Road located to the north of the northeast corner of the Warwick property is constructed on a small fill which slopes to ground level near the northwest corner of the property. Between the roadway and Warwick's property there is located a shallow ditch or barrow pit which was used to supply dirt for the roadway fill. At the northeast corner of the Warwick property the barrow pit measuring from the toe of the roadway to the southernmost edge of the pit is 56 feet in width. From the southern edge of the pit there is a flat strip of land extending from its bank to the common boundary line of the parties. This strip is 6 feet in width at the northeast corner of the property and extends westerly and gradually becomes wider until it is approximately 22 feet in width at the western boundary.
*527 The District mows and maintains the shoulder of the road, the slope, the barrow pit and level strip between the paved portion of the road and the boundary line. Warwick's property is completely surrounded by that of the District. It is "landlocked." There is no access to it other than across the lands of the District.
Prior to the institution of this suit Warwick's predecessor in title had been denied access to the public road by the District. Appellant also applied to the District for access to the road which was denied, whereupon, this suit was filed.
The chancellor found the District's argument that Warwick could secure a way of necessity westerly across the diversion channel and through other lands with access to the public road to be naive and that its actions in denying complainant access to the public road north of his property were arbitrary; whereupon, he decreed that the complainant had a right of access to the road as an abutting owner and enjoined the defendant from interfering with complainant's free and easy access to his property from a point on Harbor Drive Road. He further directed that the District cooperate with the complainant in utilization of this accessway so as not to interfere with the orderly flow of traffic from all directions, and finally, "in the event defendant does not so cooperate, complainant may determine the utilization of said access and apply to this Court for approval thereof," jurisdiction being retained for this purpose. We affirm.
The Pearl River Valley Water Supply District is an agency of the State of Mississippi. Miss. Code 1942 Ann. § 5956-53 (1956). Culley v. Pearl River Industrial Comm'n, 234 Miss. 788, 108 So.2d 390 (1959). Its actions in promulgating rules and regulations for carrying into effect the purposes of the Pearl River Valley Water Supply District Act (Laws of 1958, Chapter 197) are subject to judicial review. Harbor Drive Road and that portion of New Charity Church Road on the District's property are not conventional public highways inasmuch as they are public roads constructed upon lands vested in the Pearl River Valley Water Supply District. As such there does not exist the usual right-of-way easement on either side of the traveled portion of the road. In this sense Warwick's property does not technically abut the road or road "right-of-way" but rather abuts the strip of land of the District between the traveled portion of the road and his property. The record discloses, however, that the general appearance of the road, including its shoulders, the slope therefrom to the barrow pit, and the small intervening strip, is that of an ordinary highway. The appellant contends the case of Mississippi State Highway Commission v. Spencer, 233 Miss. 155, 101 So.2d 499 (1958), is authority supporting his theory that he is entitled to unlimited access to any and all points of the District road adjacent to his northern boundary, as well as Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839 (1958); Carney v. Mississippi State Highway Commission, 233 Miss. 598, 103 So.2d 413 (1958); and Morris v. Covington County, 118 Miss. 875, 80 So. 337 (1918). In Spencer we stated:
So that, it appears that the abutting owner has special interests and rights in a public street, which are valuable, and indispensable to the proper and beneficial enjoyment of his property. His right to use the street as a street, is as much property as the street itself, and neither the public, nor a corporation, nor an individual, can lawfully deprive him of it, against his will, without compensation. * * * (233 Miss. at 170, 101 So.2d at 503.)
In Muse we stated:
It is undoubtedly true that the abutting landowner on a conventional public highway has a special right of access and user in the highway; and that right is a property right which cannot be damaged or taken from him without due compensation. *528 The right of access is appurtenent to his land, and to destroy that right is to damage his property. * * * (233 Miss. at 713, 103 So.2d at 847.)
We are of the opinion, however, that these authorities are not apropos to the present situation inasmuch as they relate to a vested property right of access over right-of-way easements obtained by the State Highway Department as a necessary adjunct to the construction of highways and the regulation of traffic over them. Undoubtedly, in the event these highways are ceased to be used as such, the right-of-way easement would revert to the abutting owners. In the present case, however, the District is vested with the fee title to the lands upon which the public road is constructed with no possibility of reverter upon abandonment. This distinguishes the cited cases from the present situation and in our opinion they are not persuasive to the viewpoint of unlimited access to the public road of the District.
The appellee relies primarily upon the case of Robinson v. State, 3 A.D.2d 326, 160 N.Y.S.2d 439 (1957), and the case of State v. Fuller, 407 S.W.2d 215 (Tex. 1966), in support of its theory that Warwick is not entitled to ingress and egress to the public road upon its property. The Fuller case is more nearly analogous to the present situation. It states in part:
The term "abutting owner," when used in relation to highways, ordinarily refers to one whose land actually adjoins the way, although it is sometimes used loosely without implying more than a close proximity. See Black's Law Dictionary, 3rd ed. 1944; 25 Am.Jur. Highways § 153. Here the State has acquired, perhaps unwittingly, a strip of land which, according to the Fullers, it can use only for highway purposes. That did not, however, make the property part of the highway. If the additional land were not needed for highway purposes, it could be sold by the State as authorized by Article 6673a, Vernon's Ann.Tex. Civ.Stat. The responsible officials evidently expect to widen the highway to include the strip in controversy as well as the adjoining 50 feet owned by the Fullers, but a public way has not yet been established on the State's half of the former railroad right-of-way. At the present time, therefore, the Fullers do not own land abutting on the highway and have no right of access thereto across the tract awarded to the State in this action. (407 S.W.2d at 220-221.)
Similarly, the District could dispose of the intervening strip of land by authority of the Act if it concluded that a sale would be prudent. Since the District is the owner in fee of the lands between the paved portion of the road and the northern boundary of Warwick, we must conclude that the lower court erred as a matter of law in finding that his lands abutted the roadway.
The question presented is novel and does not afford a just solution by strict adherence to the law. This Court has heretofore upheld ways of necessity from isolated parcels of land to the public roads as being essential to the owner's enjoyment of his property. Quin v. Sabine, 183 Miss. 375, 183 So. 701 (1938); Board of Supervisors of Lamar County v. Elliott, 107 Miss. 841, 66 So. 203 (1914); and Pleas v. Thomas, 75 Miss. 495, 22 So. 820 (1897). Indeed, our legislature in obedience to the dictates of Article 4, Section 110 of the Mississippi Constitution (1890) by the enactment of Mississippi Code 1942 Annotated section 8419 (1956), made provision for roadways to be laid out upon the lands of another when necessary for ingress and egress, thus acknowledging, as did the framers of the constitution, and as do the courts, that an owner is entitled to the full enjoyment of his property where feasible, especially if the enjoyment of the right would make useful and valuable that which otherwise would be useless and valueless. The general law is set forth in 25 *529 Am.Jur.2d, Easements, section 34 at 447 (1966), as follows:
A way of necessity is an easement founded on an implied grant or implied reservation. It arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of strangers. In such a situation there is an implied grant of a way across the grantor's remaining land to the part conveyed, or conversely, an implied reservation of a way to the grantor's remaining land across the portion of the land conveyed. The order in which two parcels of land are conveyed makes no difference in determining whether there is a right of way by necessity appurtenant to either.
See also 28 C.J.S. Easements § 36 at 699 (1941). We are aware that these authorities are not squarely in point. However, we are of the opinion that the constitutional dictate (Section 110), the legislative enactment (Miss. Code 1942 Ann. § 8419), and the cases cited amply proclaim that the property owner is entitled as a matter of right and public policy to its full enjoyment and that the state will lend its arm to establish by implication of law a right of ingress and egress where none exists in order to accomplish this purpose. Cf. Pennington v. Harris, 240 Miss. 126, 126 So.2d 505 (1961), and Gulf, Mobile & Ohio R. Co. v. Tallahatchie Drainage Dist., 218 Miss. 583, 67 So.2d 528 (1953).
In Mississippi State Highway Commission v. Spencer, 233 Miss. 155, 174, 101 So.2d 499, 504-505 (1958), we stated:
The relief granted was by means of the issuance of a conditional decree in favor of cross-complainant. It is well established that a court of chancery may so shape its decrees as to effect justice between the parties. This is often done by granting relief on terms or on certain conditions to be performed or observed. * * *
In 19 Am.Jur., Equity, Sec. 22, it is said: "A court of equity has power to make its granting of relief dependent upon the performance of conditions by a party litigant, if the conditions are such as are imposed in the exercise of a sound discretion and of a character calculated to satisfy the dictates of conscience. The court may thus protect and give effect to the rights of one party while awarding relief to the other. The court is not restricted by strict legal rights. In the exercise of its power, the court may require the performance of conditions which are designed to protect the rights of the parties pending appeal or to safeguard temporarily the public interest while the decree is being carried into effect.
We are of the opinion that the legislature did not intend in creating the Pearl River Valley Water Supply District to establish a state agency with authority to deprive a citizen of the enjoyment of his property unless the same was necessary to accomplish some lawful purpose of the Act. The record before us discloses no logical reason for depriving Warwick of a means of access to his property.
It is apparent that the most reasonable way of access is from the northern boundary of Warwick's property to the southern edge of Harbor Drive Road.
We affirm as to the right of Warwick to a way of necessity but we remand to the Chancery Court for the designation of a point upon Harbor Drive Road as the sole way of necessity for ingress and egress to this 47-acre tract, and for the fixing of proper compensation to be paid by Warwick to the District for this right of way over the District's land.
*530 Affirmed as modified on direct and cross appeals and remanded.
All Justices concur.