TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00579-CV






W. C. Carson and Albar Family Trust, Appellants


v.


The State of Texas; William Garbade; Robert Harwood; Darcie Schipull 

and Mike McKissick, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN002763, HONORABLE PAUL DAVIS, JUDGE PRESIDING






O P I N I O N



 Appellants W.C. Carson ("Carson") and the Albar Family Trust ("Albar") appeal
from the trial court's judgment finding that they should take nothing by their inverse condemnation
suit against appellees the State of Texas, William Garbade, Robert Harwood, Darcie Schipull, and
Mike McKissick (collectively, "the State"). (1) We affirm the judgment.


Factual Background

 The history surrounding these tracts of land goes back to the 1950s. Carson's and
Albar's properties were originally part of the Otwell tract, bordered on the north by Wonder World
Drive, on the east by Interstate Highway 35 ("I-35") and its frontage road, and on the west by the bus
depot, a tract owned by the San Marcos Independent School District. The bus depot only has access
to Wonder World Drive. Before 1957, I-35 and Wonder World Drive were at grade elevation. In
1957, the State condemned the northernmost portion of the Otwell tract at the corner of Wonder
World Drive and I-35, along with a small portion of the bus depot's northeast corner. The State then
elevated Wonder World Drive over I-35 and built "jug handle" access ramps between Wonder World
Drive and the highway; the southwest jug handle was situated on the condemned land. In 1981, the
remaining Otwell tract was divided, Carson taking the northern portion and Albar the southern
portion. Carson's tract is undeveloped; Albar's is developed with a commercial building.

 In the early 1990s, the State redesigned the intersection, dropping Wonder World
Drive back to grade and this time elevating I-35. The State removed the jug handle access ramps
but left a portion of the ramp to give the bus depot access to Wonder World Drive. This driveway
straddles the bus depot's property to the west and the State's right-of-way to the east. A gravel road
runs from the paved driveway to the Carson tract and continues down along the west side of the
Carson tract to the Albar tract. (2) There is a left turn lane on Wonder World Drive for turning into the
driveway. Carson testified that since he bought his property in 1984, he had accessed it by turning
into the paved driveway from Wonder World Drive and continuing down the gravel road.

 In 2000, when Carson sought to sell his property, the buyer required an assurance of
continued access to both the I-35 frontage road and Wonder World Drive. Carson submitted permit
applications to the State for three driveways, one along Wonder World Drive and two along the
frontage road. Carson applied for a forty-five foot wide driveway onto Wonder World Drive about
twenty feet east of the bus depot's driveway. The requested drive would run 140 feet across the
State's tract to Carson's property. During his inquiries, Carson learned that the State again plans to
reconfigure the intersection of Wonder World Drive and I-35. All of the properties along the
southwest side of Wonder World Drive will have new driveways built except for the Carson tract,
which is closest to the intersection of Wonder World Drive and the frontage road. The State intends
to remove the bus depot's current driveway and build a new one about 100 feet west along Wonder
World Drive. The State informed Carson that it intended to deny application for a driveway off
Wonder World Drive due to its plans to reconfigure the intersection; at trial a State's witness
testified that Carson would be granted the permits for two driveways along the frontage road. 
Carson's potential buyer terminated the purchase negotiations.

 When Albar learned that its access to Wonder World Drive, taken by way of the bus
depot driveway and the gravel road along Carson's tract, would be denied, it joined Carson in suing
the State. Appellants sought an injunction barring the State from closing the driveway and requiring
the State to issue the permits and alleged that the State had committed inverse condemnation. At
trial, appellants conceded that it would be unsafe to grant the permit for the requested driveway off
Wonder World Drive. They then argued that the State must compensate them for the removal of the
current driveway that provides them access via the gravel road because they will be deprived of
access to Wonder World Drive. On appeal, appellants contend that (1) the State's decision to close
the bus depot's driveway constituted a taking for which they should be compensated, and (2) the trial
court should have considered testimony indicating that appellants' properties were devalued by the
State's decisions related to moving the bus depot's current driveway.


Standard of Review

 A trial court's determination of whether there has been a taking through inverse
condemnation is a question of law to be reviewed on appeal de novo. State v. Heal, 917 S.W.2d 6,
9 (Tex. 1996). Similarly, we review de novo a determination of a material and substantial
impairment of access. See State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988). 

 A trial court's findings of fact have the same weight as a jury's verdict. Young
Chevrolet, Inc. v. Texas Motor Vehicle Bd., 974 S.W.2d 906, 911 (Tex. App.--Austin 1998, pet.
denied); Des Champ v. Featherstone, 886 S.W.2d 536, 541 (Tex. App.--Austin 1994, no writ). We
review findings of fact for legal and factual sufficiency under the same standards used to review jury
findings. Des Champ, 886 S.W.2d at 541. To determine the legal sufficiency of the evidence, we
disregard all evidence contrary to the trial court's finding, and if there is any evidence supporting the
trial court's judgment, we will uphold the judgment. McGalliard v. Kuhlmann, 722 S.W.2d 694,
696-97 (Tex. 1986). In reviewing a factual sufficiency point, we weigh all of the evidence in the
record and may overturn a trial court's findings of fact only if they are so against the great weight
and preponderance of the evidence as to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996); Young Chevrolet, 974 S.W.2d at 911-12. The trial court as trier of fact may
draw reasonable inferences from the evidence, and its findings of fact will not be disregarded on
appeal unless the record contains no probative evidence on which to base those inferences, or the
findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. IFG
Leasing Co. v. Ellis, 748 S.W.2d 564, 656-66 (Tex. App.--Houston [1st Dist.] 1988, no writ);
Central Power & Light Co. v. Bullock, 696 S.W.2d 30, 33 (Tex. App.--Austin 1984, no writ). 
When a trial court's findings of fact are not challenged on appeal, they are binding on this Court
unless the contrary is established as a matter of law or there is no evidence to support them. 
McGalliard, 722 S.W.2d at 696; Mort Keshin & Co. v. Houston Chronicle Publ'g Co., 992 S.W.2d
642, 645 (Tex. App.--Houston [14th Dist.] 1999, no pet.); see Des Champ, 886 S.W.2d at 541
("When a court's findings of fact go unchallenged, such findings become undisputed facts binding
on all parties.").


Inverse Condemnation

 In their first issue, appellants contend that the trial court erred in failing to find
inverse condemnation in the State's decision to close the bus depot's driveway which afforded
appellants access to Wonder World Drive. The only conclusion of law that appellants specifically
challenge is the conclusion that Carson has no vested legal interest in the existing driveway. They
implicitly challenge the conclusion that they will suffer no material and substantial impairment of
access once the current driveway accessing Wonder World Drive is closed. Appellants do not
specifically challenge the trial court's findings of fact. Appellants refer to the bus depot driveway
as a joint access drive, which can be interpreted as an attack on the trial court's finding that the
driveway "exists for the benefit of the San Marco ISD bus barn property."

 At trial and on appeal, appellants refer to the existing driveway, which straddles the
line between the bus depot and the State's property, as a joint use driveway. However, Michael
McKissick, engineer for the Texas Department of Transportation ("the Department"), testified that
according to the Department's records, the driveway in question was built only for the bus barn. 
McKissick testified that generally when a driveway is condemned, the State builds a new driveway
so the property maintains its same road access. McKissick also testified that if a driveway has to be
removed but the property owner has other road access, the State "would deny him access to that
particular roadway since he already has a driveway." Whether a property has access to another road
is a principal consideration for the State when it considers whether a property has reasonable access. 

 The State argues that after it acquired the land on which the bus depot driveway lies,
appellants' predecessors did not obtain official permission to access their property from Wonder
World Drive via the jug handle. The 1957 judgment awarding the State the portion of the Otwell
tract on which the jug handle was built does not note that the State has taken any access rights;
neither does it reserve access rights to the remaining Otwell tract held by appellants' predecessors. 
The judgment simply grants the State fee simple title to the condemned property, which is now used
as State right-of-way. By contrast, the judgment awarding the State a portion of the San Marcos ISD
tract specifically reserves to the bus depot access onto Wonder World Drive.

 Appellants state that "[a]bsent specific language in the deed or condemnation
judgment divesting an owner of access rights, they are presumed to be retained by the landowners,"
but they cite no authority for that proposition. Appellants then urge, "The State must decide in each
case whether access rights should be acquired to protect the safety of the traveling public," citing
State v. Meyer, 403 S.W.2d 366 (Tex. 1966), as authority. In Meyer, the parties agreed that the
State's petition, although seeking fee simple title, did not seek to condemn the landowner's access
rights. Id. at 368-69. The issue was whether evidence of a retention of access rights should have
been admitted to mitigate the damages owed to the landowner. Id. at 369 ("In essence it is the
State's contention that since respondents . . . still have remaining land from which they have access
to the land taken, . . . there has not been a whole taking in fee simple but that instead the State has
acquired a fee title burdened with an easement for which it should be entitled to pay less than for a
fee simple absolute."). The supreme court noted that there is a clearly established right to ingress
and egress "concomitant of ownership of land abutting on a highway." Id. at 370 (emphasis added);
see also City of San Antonio v. Olivares, 505 S.W.2d 526, 530 (Tex. 1974) (abutting owners have
access rights to public streets and alleys); DuPuy v. City of Waco, 396 S.W.2d 103, 108 (Tex. 1965)
(same). An "abutting" property generally is land that actually adjoins the roadway, although it
sometimes refers to land in close proximity. State v. Fuller, 407 S.W.2d 215, 220-21 (Tex. 1966).

 Although appellants have historically enjoyed access to Wonder World Drive by way
of the bus depot driveway, it does not follow that they have a vested legal right to do so. A party
cannot gain a legal right to property against the State by adverse possession. Weatherly v. Jackson,
71 S.W.2d 259, 264-65 (Tex. 1940) ("Title cannot be acquired by adverse possession of land
belonging to the state, and such possession is not evidence that the land possessed is not the property
of the state. Similarly, long recognition by owners of adjacent surveys of certain lines as fixing the
boundaries of the surveys cannot in any way affect public domain or appropriate any portion of it.").

 When the Department condemned the portion of land lying between Wonder World
Drive and Carson's tract, it took the land in fee simple and did not reserve any access rights to the
remainder tract. At the same time, when taking the San Marcos ISD tract, the Department explicitly
reserved an access easement across the condemned property to Wonder World Drive. The record
contains no information about the 1957 condemnation proceeding or judgment by which we could
conclude as a matter of law that appellants' predecessors retained an access easement across the
taken property. See Meyer, 403 S.W.2d at 370-74 (in condemnation proceeding, both sides agreed
that access rights were not included in taking in fee simple; therefore "access appurtenant to their
remaining land is still attached"); (3) City of Corpus Christi v. Polasek, 404 S.W.2d 826, 831-32 (Tex.
Civ. App.--Corpus Christi 1966, no writ) (city took land in fee simple to construct drainage ditch
and in so doing, "condemned every right which appellee owned in the same, excluding certain
mineral rights"; city could at any time deny appellee use of ditch and "[a]t most, a temporary
permissive use is shown"; "This is not a case in which an owner's former right of access to a public
facility, appurtenant to his remainder, is being retained in his favor."). 

 The State's witnesses testified that the Department's records indicated that the
driveway was built to provide access to the bus depot and was not intended as a joint access drive. 
The fact that the existing driveway straddles the bus depot's tract and the condemned portion of the
Otwell tract does not mandate a finding that the driveway was intended to provide access to
appellants' property. Nor is a finding of joint access mandated because appellants were allowed to
use the drive or because a utility easement runs along the driveway and gravel road. Although it may
be the better practice to include an explicit acquisition of access rights in a condemnation judgment
or deed, the trial court could have infered that such was not the practice in 1957. Under that
inference, the driveway is not on appellants' land and is not a joint-use drive, appellants do not abut
Wonder World Drive, and they are not by law entitled to ingress and egress by that particular
roadway, having full access by way of the highway frontage road. See Fuller, 407 S.W.2d at 220
(abutting owner "ordinarily refers to one whose land actually adjoins the way"); Meyer, 403 S.W.2d
at 370 (right of access attaches to land abutting highway). The trial court properly concluded that
appellants had no legal right to access Wonder World Drive through the bus depot's driveway.

 Further, case law clearly holds that a property owner is not entitled to compensation
unless his access is materially and substantially impaired. Heal, 917 S.W.2d at 10-11; City of Waco
v. Texland Corp., 446 S.W.2d 1, 2 (Tex. 1969). A landowner's access is not materially and
substantially impaired if he retains access to his property by way of a different street or a more
circuitous route. Wood Oil Distrib., 751 S.W.2d at 865 (no compensation when traffic merely
required to travel more circuitous route to reach property); Olivares, 505 S.W.2d at 530 (property
owner not entitled to compensation when road to east of property closed but access still possible by
newly dedicated alley); Archenhold Auto. Supply Co. v. City of Waco, 396 S.W.2d 111, 112-14 (Tex.
1965) (no compensation for road closure where access still available by another street); Collins v.
City of San Antonio, 443 S.W.2d 563, 568 (Tex. Civ. App.--San Antonio 1969, writ ref'd n.r.e.) (no
compensation for more circuitous route due to closing of street on one side of property). In other
words, a landowner is not entitled to compensation if he "has reasonable access to his property after
construction of the public improvement. The benefits of private ownership have been assured so
long as there is reasonable access and an action for compensation under the Constitution will not lie
where such is the case." DuPuy, 396 S.W.2d at 109. (4) Here, appellants retain full access to the I-35
frontage road. Access to their properties may be slightly more circuitous, requiring a turn onto the
frontage road, but their properties are not materially or substantially impaired. 


Conclusion

 Appellants are not entitled to inverse condemnation compensation for the driveway's
closure. We overrule appellants' first issue on appeal. Having held appellants are not entitled to
compensation for inverse condemnation, it is unnecessary for us to consider appellants' second issue
related to valuation testimony. Accordingly, we affirm the trial court's judgment.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: July 24, 2003
1. Garbade, Harwood, Schipul, and McKissick are State employees who in the course of their
employment were involved in the decision to close the driveway and deny appellants a new driveway
permit.
2. Albar's deed reserves an access easement along the west side of Carson's property. A
utility easement runs along the west side of the State's, Carson's and Albar's tracts in the same area
as the driveway and gravel road.
3. In a footnote, the Meyer court quoted from an article discussing highway condemnations,
in which the author said that "the weight of authority seems to be that the owner of the remaining
portions of the tract from which the condemned strip is taken has a right of access to the highway,
unless, of course, the judgment of condemnation indicates in some way that that right is being
taken." State v. Meyer, 403 S.W.2d 366, 372 n.1 (Tex. 1966) (quoting Dan Moody, Jr.,
Condemnation of Land for Highway or Expressway, 33 Tex. L. Rev. 357, 366-67 (1955)). However,
the article concludes that the "only safe course is to insist on consideration of this point in the
condemnation proceeding; if the condemning authority refuses to agree that a right of access is being
retained, it must be assumed that it is being taken . . . ." Id.
4. We recognize that the case law cited above discusses when a roadway is closed, not when
a driveway is closed. However, we believe the rule regarding material and substantial impairment
applies equally to this situation.